AO 120 (Rev. 08/10)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____District of Connecticut_____ on the following

☐ Trademarks or    ☑ Patents.    ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>3:23-cv-01349-OAW | DATE FILED<br>10/16/2023 | U.S. DISTRICT COURT<br>District of Connecticut |
|---|---|---|

| PLAINTIFF<br><br>Veto Pro Pac LLC | DEFENDANT<br><br>Velocity Workwear Ltd.<br>doing business as<br>Velocity Pro Gear |
|---|---|

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1  See attached | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY |  |
|---|---|---|
|  | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
|  |

| CLERK<br>/s/ Dinah Milton Kinney | (BY) DEPUTY CLERK<br>/s/ Marquita Peterson | DATE<br><br>10/17/2023 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VETO PRO PAC, LLC,

          Plaintiff,

v.

VELOCITY WORKWEAR LTD. d/b/a
VELOCITY PRO GEAR,

          Defendant.

**COMPLAINT**

**AND JURY DEMAND**

Civil Action No. 3:23-cv-1349

Plaintiff, Veto Pro Pac, LLC, by and through its attorneys, Dilworth IP, LLC, alleges and states as follows:

## THE PARTIES

1.    Plaintiff Veto Pro Pac, LLC (hereinafter "Veto Pro Pac" or "Plaintiff") is a Connecticut Limited Liability Company having a place of business at 3 Morgan Avenue, Norwalk, Connecticut 06851.

2.    Upon information and belief, Defendant Velocity Workwear Ltd. d/b/a Velocity Pro Gear (hereinafter "Velocity Pro Gear" or "Defendant") is a company organized under the laws of the United Kingdom having a place of business at Unit 4, Broadfield Barns, Kidderminster Road, Droitwich, WR9 0PP, United Kingdom.

## JURISDICTION AND VENUE

3.    This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq. and for violations of the Lanham Act, 15 U.S.C. § 1051 et seq., as it relates to trade dress.

4.     This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 1338.

5.     This Court has personal jurisdiction over Defendant in accordance with the Connecticut long-arm statute and due process.

6.     Upon information and belief, Defendant has marketed to customers in the United States including Connecticut, through its website, social media, influencers, and distributors, and has offered to sell and/or sold its products to customers in Connecticut, directly and through distributors, facilitating and/or enabling users to purchase the infringing goods from and in Connecticut.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and/or (3) because this is the judicial district where a substantial part of the events giving rise to the claims occurred and where Defendant is subject to personal jurisdiction.

## BACKGROUND AND FACTS

8.     Plaintiff is a leader in the manufacture and sale of premium tool bags and backpacks for trades professionals in the United States and abroad.

9.     For over twenty years, Plaintiff has built and maintained a reputation amongst trades professionals for providing high quality and dependable tool bags.

10.     Plaintiff is the owner of U.S. Patent No. 9,345,301, for a Supported Composite Tool Pack, issued by the United States Patent Office on May 24, 2016 (hereinafter referred to as "the '301 patent"). A true and correct copy of the '301 patent is attached hereto as Exhibit A.

11.     Plaintiff is the owner of now expired U.S. Patent No. 6,915,902, for a Tool Bag, issued by the United States Patent Office on July 12, 2005 (hereinafter referred to as "the '902 patent"). A true and correct copy of the '902 patent is attached hereto as Exhibit B.

2

12.     Plaintiff is the owner of U.S. Design Patent No. D6,135,507, for an Open Top Carrier, issued by the United States Patent Office on April 13, 2010 (hereinafter referred to as "the '507 patent"). A true and correct copy of the '507 patent is attached hereto as Exhibit C.

13.     Plaintiff has and continues to give notice to the public that its products are patented, in accordance with 35 U.S.C. § 287, by fixing the number(s) of the patent(s) on its products and/or or by fixing thereon an address of a posting on the Internet that associates the patented article(s) with the number(s) of the patent(s).

14.     Plaintiff designs its products with distinctive, non-functional, features that customers associate with Veto Pro Pac.

15.     Plaintiff owns trade dress rights in its products, namely its tool bags, protected under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

16.     Defendant entered the market after Plaintiff using the name "Velocity Pro Gear," which is confusingly similar to "Veto Pro Pac," and has been systematically duplicating Plaintiff's product offerings and imitating Plaintiff.

17.     Defendant's website replicates the look and feel of Plaintiff's website with the same color scheme and a landing page having substantially similar navigation features and icons "to find your perfect tool bag."

18.     On or about November 30, 2020, counsel for Plaintiff wrote to Defendant putting Defendant on notice of its infringement of the '301 patent, the '902 patent, and Plaintiff's trade dress rights.

19.     On or about December 7, 2020, Defendant alleged through counsel that it was not selling any of the accused products in the United States.

20.     After December 7, 2020, Defendant's products continued to be offered for sale and sold, directly and through distributors, to customers in the United States.

21.     On or about June 13, 2022, counsel for Plaintiff again wrote to Defendant regarding its continued infringement of the '301 patent, the '902 patent, and Plaintiff's trade dress rights, and its infringement of the '507 patent.

22.     On or about June 29, 2022, counsel for Defendant responded alleging that any shipments to the United States were unplanned and therefore likely limited in number.

23.     On or about August 4, 2022, counsel for Plaintiff wrote to Defendant requesting assurances that its infringing conduct would cease and requesting an accounting of Defendant's sales in the United States. No response was received from Defendant or its counsel.

24.     Defendant's products continue to be offered for sale and sold, directly and/or through distributors, to customers in the United States.

25.     Defendant encourages customers outside of the United Kingdom to order its products from its partner, Toolmonster, also based in the United Kingdom. Toolmonster has and continues to offer to sell, sell, and ship Defendant's products to customers in the United States.

26.     Plaintiff has been harmed, and will continue to be harmed, by Defendant's infringement.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,345,301

27.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

4

28.     Defendant has directly and/or indirectly infringed the '301 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice one or more claims of the '301 patent in violation of 35 U.S.C. § 271.

29.     Defendant has directly infringed, and upon information and belief continues to directly infringe, at least claims 12-15 of the '301 patent by offering to sell, selling and/or importing into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

30.     Defendant has indirectly infringed, and upon information and belief continues to indirectly infringe, at least claims 12-15 of the '301 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

31.     Defendant has directly infringed, and upon information and belief continues to directly infringe, at least claims 12-15 of the '301 patent by offering to sell, selling and/or importing into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

32.     Defendant has indirectly infringed, and upon information and belief continues to indirectly infringe, at least claims 12-15 of the '301 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

33.     Plaintiff has been harmed, and will continue to be harmed, by Defendant's infringement of the '301 patent.

4881-9360-6022, v. 1

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,915,902

34.    Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

35.    Though the '902 patent expired in November 2022, past damages for infringement of the '902 patent occurring prior to expiration are recoverable and sought in this action.

36.    Defendant has directly and/or indirectly infringed the '902 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice one or more claims of the '902 patent in violation of 35 U.S.C. § 271.

37.    Prior to the expiration of the '902 patent, Defendant directly infringed claims 1-7 of the '902 patent by offering to sell, selling and/or importing into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

38.    Prior to the expiration of the '902 patent, Defendant indirectly infringed claims 1-7 of the '902 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

39.    Prior to the expiration of the '902 patent, Defendant directly infringed claims 1-7 of the '902 patent by offering to sell, selling and/or importing into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

40.    Prior to the expiration of the '902 patent, Defendant indirectly infringed claims 1-7 of the '902 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

41.    Plaintiff has been harmed by Defendant's infringement of the '902 patent.

4881-9360-6022, v. 1

## COUNT III – INFRINGEMENT OF U.S. DESIGN PATENT NO. D6,135,507

42.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

43.     Defendant has directly and/or indirectly infringed the '507 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice the claim of the '507 patent in violation of 35 U.S.C. § 271.

44.     Defendant has directly infringed, and upon information and belief continues to directly infringe, the claim of the '507 patent by offering to sell, selling and/or importing into the United States the Rogue PB 8.0 bag and variations thereof in violation of 35 U.S.C. § 271(a).

45.     Defendant has indirectly infringed, and upon information and belief continues to indirectly infringe, the claim of the '507 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue PB 8.0 bag and variations thereof in violation of 35 U.S.C. § 271(b).

46.      Defendant has directly infringed, and upon information and belief continues to directly infringe, the claim of the '507 patent by offering to sell, selling and/or importing into the United States the Rogue 3.0 open tote and variations thereof in violation of 35 U.S.C. § 271(a).

47.     Defendant has indirectly infringed, and upon information and belief continues to indirectly infringe, the claim of the '507 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 3.0 open tote and variations thereof in violation of 35 U.S.C. § 271(b).

4881-9360-6022, v. 1

48.     Plaintiff has been harmed, and will continue to be harmed, by Defendant's infringement of the '507 patent.

## COUNT IV – UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. 1125(a) – FALSE DESIGNATION OF ORIGIN AND TRADE DRESS

49.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

50.     Plaintiff has valid and protectable rights in the distinctive trade dress for its tool bags.

51.     Defendant has and continues to systematically duplicate Plaintiff's product offerings and imitate Plaintiff in violation of Plaintiff's trade dress rights.

52.     Plaintiff's ownership and exclusive use in commerce of the trade dress for tool bags predates the use by Defendant of the same source identifying characteristics on its tool bags.

53.     Upon information and belief, Defendant's products are intended to capitalize on and free ride off of the success that Plaintiff has achieved with its unique combination of features on its bags.

54.     Plaintiff is known, for example, by its distinctive handles, uniquely shaped bases with exposed rivets, patterned padding surfaces on its backpacks, its black, grey, and orange color schemes and logos affixed to its products, and grey pocket reinforcements. One or more of these features are replicated in most if not all of Defendant's products.

55.     Plaintiff's products generally have a rounded front flap and diagonally positioned straps with a label in between. These features are replicated in at least the Rogue 4.0, Rogue 4.5, Rogue 5.0, Rogue 6.0 products offered by Defendant.

8

56.     Defendant's logos and insignia, affixed to its products and appearing on its website, are accented with an orange color that is the same or substantially similar color used by Plaintiff.

57.     These and many other features, collectively contributing to the image and overall appearance of Plaintiff's products, are distinctive, non-functional, and have become uniquely associated with Plaintiff.

58.     Plaintiff and Defendant sell the relevant goods through overlapping sales channels including but not limited to both selling their goods through the internet and/or to trades professionals.

59.     Defendant's conduct is not merely *likely* to cause confusion as to the source of its products but has indeed caused actual confusion.

60.     Defendant's conduct is likely to cause initial interest, forward, reverse, and/or post-sale confusion, to the irreparable harm and detriment of the Plaintiff and the substantial goodwill it has developed in its trade dress, its brand, and with its consumers.

61.     Defendant uses the confusingly similar trade dress in connection with its tool bags, as described above, in interstate commerce in connection with the sale, offering for sale, and distribution, and/or advertising of its tool bags.

62.     Defendant's use in commerce of the confusingly similar trade dress, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff and/or as to the origin, sponsorship, or approval by Plaintiff of Defendant's goods, services, or commercial activity.

4881-9360-6022, v. 1

63.    Plaintiff has been harmed, and will continue to be harmed, by Defendant's actions in violation of 15 U.S.C. § 1125(a).

64.    Upon information and belief, Defendant's conduct is willful and intentional. Defendant is and was, at all relevant times, both actually and constructively aware of Plaintiff's prior use and ownership of the trade dress, and therefore Defendant's conduct is also willful and intentional.

## COUNT V – CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUPTA")

65.    Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

66.    Pursuant to the Connecticut Unfair Trade Practices Act (hereinafter "CUPTA"), Conn. Gen. Stat. § 42-110a, et seq., it is unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

67.    By engaging in the acts alleged above, Defendant has willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness.

68.    Defendant has benefitted, and continues to benefit, from the unlawful use of Plaintiff's trade dress, deceiving both current and potential customers.

69.    Defendant's willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

70.    Defendant's conduct has caused and will continue to cause substantial injury to Plaintiff and to the public interest.

71.    Defendant committed such acts, and continues to commit such acts, in the conduct of trade or commerce.

4881-9360-6022, v. 1

72.     Plaintiff has suffered, and if Defendant is not enjoined will continue to suffer, an ascertainable loss of money or property as a result of Defendant's actions.

73.     By virtue of the above conduct, Defendant has engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of CUPTA, Conn. Gen. Stat. § 42-110a, et seq.

74.     Defendant's continued unlawful and unfair trade practices is causing and will cause Plaintiff irreparable harm.

75.     A copy of this Complaint has been mailed to the Attorney General as required by Conn. Gen. Stat. § 42-110g(c).

## COUNT VI – COMMON LAW UNFAIR COMPETITION

76.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

77.     Defendant's conduct as described above constitutes unfair competition under common law.

78.     Defendant's actions have damaged Plaintiff and Plaintiff has and will continue to be irreparably harmed unless Defendant is enjoined by this Court.

## DEMAND FOR JURY TRIAL

79.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on all issues so triable.

4881-9360-6022, v. 1

**PRAYER FOR RELIEF**

Plaintiff prays for relief and demand judgment as follows:

1.      That judgment be entered that Defendant has infringed one or more of the asserted patents, directly and indirectly, by way of inducement or contributory infringement, literally or under the doctrine of equivalents;

2.      That, in accordance with 35 U.S.C. § 283, Defendant and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from (1) infringing the asserted patents and (2) making, using, selling, and offering for sale the infringing products;

3.      That judgment be entered that (i) Defendant's use of the confusingly similar trade dress in connection with its tool bags constitutes false designation of origin in violation of 15 U.S.C. § 1125; (ii) Defendant has infringed Plaintiff's trade dress in violation of 15 U.S.C. § 1125; and that both of the foregoing wrongful activities by Defendant were willful.

4.      That this court enter an injunction against further infringement and false designation of origin concerning Plaintiff's trade dress for tool bags, and further unfair competition and unfair or deceptive acts or practices related thereto, by Defendant and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, including at least from selling, offering to sell, distributing, importing, or advertising infringing products, or any other products that use a copy, reproduction, or colorable imitation of the Plaintiff's trade dress.

5.      That Defendant be ordered to provide an accounting of all sales in and to the United States, directly and through distributors or other third parties;

12

6.      An award of damages, including actual damages and/or Defendant's profits, under 35 U.S.C. § 284, 15 U.S.C. § 1117, and/or Conn. Gen. Stat. § 42-110g;

7.      That the case be found exceptional under 35 U.S.C. § 285;

8.      An award of attorneys' fees under 35 U.S.C. § 285, 15 U.S.C. § 1117, and/or Conn. Gen. Stat. § 42-110g;

9.      Costs and expenses in this action;

10.     An award of prejudgment and post-judgment interest; and

11.     Such other and further relief as the Court may deem just and proper.

Dated:          October 16, 2023

DILWORTH IP, LLC

Attorneys for Plaintiff

/s/ Benjamin J. Lehberger
Benjamin J. Lehberger, Esq. (CT26880)
Julie Tolek, Esq. (*pro hac vice*, MA 688697)
470 James Street, Suite 007
New Haven, Connecticut 06513
Phone: (203) 220-8496
blehberger@dilworthip.com
jtolek@dilworthip.com
dilworthip@dilworthip.com

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the

Court's electronic filing system this 16th day of October, 2023.

/s/ Benjamin J. Lehberger
Benjamin J. Lehberger

14

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Veto Pro Pac, LLC | Velocity Workwear Ltd. d/b/a Velocity Pro Gear |

**(b)** County of Residence of First Listed Plaintiff    Fairfield
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Worcestershire
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Dilworth IP, LLC    tel. 203-220-8496
470 James Street, New Haven, CT 06513

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [x] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 USC 271; 15 USC 1125

Brief description of cause:
patent infringement, violation of Lanham Act, violation of CUPTA, unfair competition

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
injunction, damages

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
Oct 16, 2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Benjamin J. Lehberger

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Case 3:23-cv-01349-OAW   Document 9-1   Filed 10/16/23   Page 17 of 64

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

Exhibit A

US009345301B2

(12) **United States Patent**
    Brouard et al.

(10) **Patent No.:**     **US 9,345,301 B2**
(45) **Date of Patent:**     **May 24, 2016**

(54) **SUPPORTED COMPOSITE TOOL PACK**

(71) Applicant: **Veto Pro Pac, LLC**, Norwalk, CT (US)

(72) Inventors: **Roger Brouard**, Norwalk, CT (US); **Lee Griswold**, Bethel, CT (US); **Rui Henriques**, Wolcott, CT (US); **Ken Benson**, Southbury, CT (US)

(73) Assignee: **Veto Pro Pac, LLC**, Norwalk, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 87 days.

(21) Appl. No.: **14/142,857**

(22) Filed: **Dec. 29, 2013**

(65) **Prior Publication Data**
    US 2014/0239024 A1     Aug. 28, 2014

**Related U.S. Application Data**

(60) Provisional application No. 61/769,219, filed on Feb. 26, 2013.

(51) **Int. Cl.**
    *A45F 3/04*     (2006.01)
    *A45C 13/36*     (2006.01)
    *A45C 13/02*     (2006.01)
    *A45F 3/14*     (2006.01)

(52) **U.S. Cl.**
    CPC . *A45C 13/36* (2013.01); *A45F 3/04* (2013.01); *A45C 2013/026* (2013.01); *A45F 2003/146* (2013.01); *A45F 2200/0575* (2013.01)

(58) **Field of Classification Search**
    CPC ... A45F 3/04; A45F 2200/0575; A45C 13/02; A45C 13/026; A45C 13/36
    USPC .................................. 224/627; 206/372, 373
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D198,236 | S | * | 5/1964 | Schaefer ........................ D3/308 |
| 3,960,300 | A | * | 6/1976 | Dickler ........................ 224/629 |
| 4,720,021 | A | * | 1/1988 | Byrns ........................... 220/764 |
| D314,279 | S | * | 2/1991 | Hotchkiss .................... D3/309 |
| 5,090,604 | A | | 2/1992 | Howe |
| D325,280 | S | * | 4/1992 | Nelson ........................ D3/309 |
| D329,135 | S | * | 9/1992 | Embree ........................ D3/308 |

(Continued)

FOREIGN PATENT DOCUMENTS

EP          2233254 A1     9/2010

OTHER PUBLICATIONS

International Search Report and Written Opinion mailed Apr. 17, 2014 (PCT/US2013/078168).

*Primary Examiner* — Justin Larson
(74) *Attorney, Agent, or Firm* — Alix, Yale & Ristas, LLP

(57)     **ABSTRACT**

A supported composite tool pack according to aspects of the disclosure includes a concave plastic base coupled to a durable fabric body. A substantially rigid support panel divides the interior of the pack and supports the fabric body and contents of the pack with respect to the base. The pack includes a pair of backpack straps permitting the pack to be worn on the back of a user, while keeping both hands free for opening doors, hatches or scaling ladders. The fabric body defines a plurality of organizational structures inside the pack, including but not limited to closed and open pockets, rings and clips for the placement of tools, spare parts and other equipment. The base and support panel maintain the pack and its contents in an upright and accessible position when open or closed, giving the user a stable, protected work platform no matter the environment.

**16 Claims, 15 Drawing Sheets**



## US 9,345,301 B2
Page 2

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,209,384 | A | | 5/1993 | Anderson |
| D376,477 | S | * | 12/1996 | Patterson, Jr. ................. D3/304 |
| 6,039,205 | A | * | 3/2000 | Flink ........................ 220/659 |
| D426,384 | S | * | 6/2000 | Broard ....................... D3/276 |
| 6,126,003 | A | * | 10/2000 | Broard ....................... 206/372 |
| 6,460,697 | B1 | * | 10/2002 | Stevens ...................... 206/225 |
| 6,571,998 | B2 | * | 6/2003 | Godshaw et al. ............. 224/607 |
| 6,626,342 | B1 | * | 9/2003 | Gleason ...................... 224/633 |
| 6,651,853 | B2 | * | 11/2003 | Higgins et al. ............... 224/155 |
| D487,345 | S | * | 3/2004 | Broard ....................... D3/289 |
| D490,245 | S | | 5/2004 | Broard |
| 6,915,902 | B2 | * | 7/2005 | Broard ....................... 206/373 |
| 6,945,442 | B2 | * | 9/2005 | Godshaw et al. ............. 224/607 |
| 7,165,705 | B2 | * | 1/2007 | Haro ......................... 224/629 |
| 7,350,682 | B2 | * | 4/2008 | Meyer ....................... 224/628 |
| 7,673,777 | B2 | * | 3/2010 | Gleason, Jr. ................. 224/635 |
| D613,507 | S | * | 4/2010 | Broard ....................... D3/315 |
| D614,404 | S | * | 4/2010 | Brunner ...................... D3/304 |
| 7,780,051 | B2 | * | 8/2010 | Godshaw et al. ............. 224/607 |
| 8,152,037 | B2 | | 4/2012 | Sabbag |
| 8,381,956 | B2 | * | 2/2013 | Gleason, Jr. ................. 224/645 |
| 8,403,141 | B2 | * | 3/2013 | Williams et al. ............. 206/372 |
| 8,651,273 | B2 | * | 2/2014 | Williams et al. ............. 206/372 |
| 8,708,206 | B2 | * | 4/2014 | Onessimo et al. ............ 224/576 |
| D714,059 | S | * | 9/2014 | Blackwell et al. ........... D3/304 |
| 8,833,557 | B1 | * | 9/2014 | Gwynn et al. ............... 206/373 |
| D725,910 | S | * | 4/2015 | Sampaio ..................... D3/315 |
| 2003/0075468 | A1 | * | 4/2003 | Story et al. ................. 206/373 |
| 2004/0065573 | A1 | * | 4/2004 | Broard ....................... 206/373 |
| 2007/0056868 | A1 | * | 3/2007 | Godshaw et al. ............. 206/373 |
| 2008/0073361 | A1 | | 3/2008 | Broard |
| 2008/0179370 | A1 | * | 7/2008 | Williams .................... 224/682 |
| 2008/0202962 | A1 | * | 8/2008 | Broard ....................... 206/373 |
| 2008/0230416 | A1 | * | 9/2008 | Broard ....................... 206/372 |
| 2014/0239024 | A1 | * | 8/2014 | Broard et al. ............... 224/259 |
| 2014/0262886 | A1 | * | 9/2014 | Kinskey et al. ............. 206/373 |

* cited by examiner

U.S. Patent    May 24, 2016    Sheet 1 of 15    US 9,345,301 B2



**Figure 1**



**Figure 2**

U.S. Patent          May 24, 2016          Sheet 3 of 15          US 9,345,301 B2



**Figure 3**



Figure 4



**Figure 5A**

**Figure 5B**



**Figure 5C**



**Figure 5D**



**Figure 6**



**Figure 7**



**Figure 8A**



**Figure 8B**



**Figure 9A**



**Figure 9B**



**Figure 10A**



**Figure 10B**



**Figure 11**



**Figure 12**



*FIG. 13*



FIG. 14

US 9,345,301 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**SUPPORTED COMPOSITE TOOL PACK**

## BACKGROUND

The present disclosure relates to devices for organizing and transporting tools and other work implements, more specifically to a tool carrying arrangement wearable on the back of a user.

Many boxes and bags have been used to organize and carry tools and other work implements. Rigid boxes for organizing and carrying tools are well-known. Buckets and soft bags are also commonly used for storing, transporting, and accessing tools and other work implements. When using traditional boxes, buckets and bags, it can be difficult to keep tools neatly arranged for quick access. Tools can be damaged by contact with each other during transport. Further, rigid buckets and tool boxes can be difficult to carry in locations requiring the use of hands to open doors, scale ladders, etc.

Modern infrastructure includes a huge number of widely dispersed sub-systems and components that must be installed, maintained or repaired by service personnel. Such systems and components are found in every possible environment, from communications equipment on rooftops and towers to energy infrastructure in below ground tunnels and chambers. Manufacturing, office and residential structures also include widely dispersed equipment. Installation and service personnel must bring tools, diagnostic equipment and parts to the equipment, wherever it is located. Often, such work areas are wet, dirty and have restricted access. Workers and their equipment must be able to safely access rooftops, tunnels and other locations where the worker must use both hands to gain access, so carrying bags or boxes by hand is not possible.

There is a need for tool storage and transport containers that protect tools, keep them organized, allow easy access to the tools and permit the user use of both hands while transporting the tools.

## SUMMARY

A supported composite tool pack according to aspects of the disclosure includes a concave plastic base coupled to a durable fabric body. A substantially rigid support panel divides the interior of the pack and supports the fabric body and contents of the pack with respect to the base. The pack includes a pair of backpack straps permitting the pack to be worn on the back of a user, while keeping both hands free for opening doors, hatches or scaling ladders. The fabric body defines a plurality of organizational structures inside the pack, including but not limited to closed and open pockets, rings and clips for the placement of tools, spare parts and other equipment. The base and support panel maintain the pack and its contents in an upright and accessible position when open or closed, giving the user a stable, protected work platform no matter the environment.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front elevation view of a supported composite tool pack according to aspects of the present invention;

FIG. 2 is a rear elevation view of the supported composite tool pack of FIG. 1;

FIG. 3 is a left side view of the supported composite tool pack of FIG. 1;

FIG. 4 is a top view of the supported composite tool pack of FIG. 1;

FIGS. 5A through 5D illustrate the internal structure and relationships among components of the supported composite tool pack according to aspects of the disclosure;

FIG. 6 is a left side view of the supported composite tool pack in an open configuration;

FIG. 7 is a rear view of the supported composite tool pack illustrating the strap support hasp disconnected from the hinged handle;

FIGS. 8A and 8B are perspective and sectional end views of the handle and hasp assembly with the hasp arranged for assembly to the hinge according to aspects of the disclosure;

FIGS. 9A and 9B are perspective and sectional end views of the handle and hasp assembly with the hasp assembled to the hinge pin;

FIGS. 10A and 10B are perspective and sectional end views of the handle and hasp assembly with the hasp latched to the hinge pin;

FIG. 11 is a partial rear elevation view of the supported composite tool pack showing a pack hanger extending from a pocket in the rear panel of the pack according to aspects of the disclosure;

FIG. 12 is a left side view of the supported composite tool pack with the front panel of the pack deployed to provide a support shelf according to aspects of the disclosure;

FIG. 13 is a rear view of the backpack strap assembly of the composite tool pack according to aspects of the disclosure; and

FIG. 14 is a partial, exploded view of the rear of the fabric body and back pad of the composite tool pack according to aspects of the disclosure.

## DETAILED DESCRIPTION OF THE DISCLOSED EMBODIMENTS

An embodiment of the disclosed supported composite tool pack (hereafter "the pack") will now be described with reference to FIGS. 1 through 14. The pack, designated generally by reference numeral 10, is configured in the form of a backpack. The major components of the pack 10 are a molded plastic base 12, a central support member 14, a handle assembly 16, and a fabric body 18 including backpack straps 20 permitting the pack to be worn on the back of a user. As best shown in FIGS. 5A through 5D, the pack includes both hard and soft structural components. The base 12 of the pack 10 is a molded plastic tub configured to provide a stable support surface for the pack while protecting the contents of the pack from the environment. Although a molded plastic base 12 is disclosed, other manufacturing methods (such as thermoforming) and materials may be used to provide a base according to the disclosure. The fabric body 18 is constructed of heavy duty nylon and polypropylene materials to protect the pack contents and hold up in jobsite conditions. The base 12 includes internal flanges 22 that are secured to a central support panel 14 of corrugated ABS sheet, but other suitably rigid and durable materials may also be used to form the central support panel. The central support panel 14 is configured to extend the width and height of the pack 10 and is secured to the flanges 22 of the base 12 by rivets 24 or other suitable fastener. In the disclosed embodiment, the central support panel 14 is generally centrally located between the front and rear of the pack, but is not limited to this specific location. As best shown in FIGS. 5A and 8-10, a handle assembly 16 at the top of the pack includes a downwardly projecting flange 26 that is fastened to the central support panel 14 at the top of the pack 10 by rivets. Alternatively, the central support panel 14 may be trapped in place by other components, but not secured to the base 12 or handle assembly 16. Thus, the central sup-

US 9,345,301 B2

3

port panel 14 forms a supportive spine of the pack 10 extending from the molded plastic base 12 to the handle assembly 16 at the top of the pack 10. The central support panel 14 divides the pack 10 into two primary compartments, a front compartment 28 and a rear compartment 30 as shown in FIGS. 5A and 5C.

As best shown in FIGS. 3 and 4, the disclosed pack 10 includes two primary zippers 32, 34 allowing access to the two primary compartments, 28, 30 of the pack. Each compartment 28, 30 includes at least one surface for the organization of tools, cables, parts and components and other work implements. In the disclosed embodiment, each compartment includes two surfaces upon which tools and work implements may be organized, numbered 1-4 in FIGS. 5C and 5D. As shown in FIG. 5A, two organizational panels 36, 38 are arranged back-to-back on either side of the central support panel 14, and together with the central support panel 14 form a support extending the length and width of the pack 10. Various zippered pockets and pouches are arranged on the fabric body 18 at the inside front and rear surfaces 40, 42 of the pack to provide additional protected storage. The exterior of the fabric body 18 includes a variety of fabric pockets, zipper pockets, D rings, and a large front pocket 44 secured with straps and quick release buckles 46. Bulky items that cannot be zipped inside the front pocket 44, may be secured using the straps and buckles 46.

The central support panel 14 is substantially, but not completely rigid. The central support panel 14 is stiff enough to support the bag body 18 and the contents of the pack in a vertical orientation when the bag is resting on the base 12, but will flex when exposed to compressive or twisting forces imposed upon the bag body 18 during use. Absolute rigidity of the central support panel is not required and a variety of materials or combinations of materials may be employed to provide the support functionality of the disclosed corrugated ABS sheet. The base 12 and central support panel 14, in combination with the bag body 18, result in an upright and stable configuration which protects the contents of the pack, while providing easy access to its contents. The upright nature of the pack 10 prevents all or parts of the bag body 18 from falling to the floor or ground where it can be soiled or damaged by the jobsite environment.

The organizational panels 36, 38 secured to the central support panel are constructed of durable nylon cordura fabric stitched to 1.5 mm polyethylene (PE) backing sheet. The PE sheet provides additional support at the center of the pack and protects the central support panel 14 from damage by sharp tools that may be stored in the pockets arranged on the panels 36, 38. As best seen in FIG. 5A tiered and nested pockets are arranged on each organizational panel 36, 38, with the largest pockets at the bottom of each organizational panel. The pockets are constructed to provide a range of sizes and orientations for the storage of various tools, parts and equipment and work implements. In the disclosed embodiment, the pockets are situated so that the heaviest and bulkiest items may be situated in the large pockets at the bottom of the pack but are easily accessible via the two main zipper openings 32, 34. Each organizational panel 36, 38 also may include flat pockets and zippered enclosures for the storage of flat and or less bulky items toward the top of the pack without obstructing the view of and access to the larger items at the bottom of the pack 10. The fabric of each organizational panel 36, 38 may extend past the bottom of the PE sheet to form a flap 48. As shown in FIG. 5A the flaps 48 are arranged against the bottom of the base 12 and secured to the base by rivets 50 or other suitable fastener. At the top of the pack 10, the organizational panels 36, 38 are secured to the top end of the central support panel

4

14 and the flange 26 extending downward from the handle assembly 16 by a plurality of rivets 50 or other suitable fastener. Together, the organizational panels 36, 38 and central support panel 14 connect the base 12 to the handle assembly 16 and provide a semi rigid supportive structure to the pack 10. The base 12 and central support 36, 38, 14 ensure that the pack remains upright even when the internal pockets are loaded with heavy tools and equipment and work implements.

The fabric pack body 18 extends from an upper lip 52 of the base 12 to the handle assembly 16 at the top of the pack 10. The pack body 18 is constructed of durable nylon and polypropylene fabric and webbing materials. These materials are preferred because of their abrasion resistance, strength, and resistance to rot and mildew as well as many common lubricants and solvents present at worksites. Other materials having similar properties may be employed. The fabric body 18 consists of fabric panels stitched together and secured to webbing support to surround and enclose the two primary compartments 28, 30 of the pack 10. As best seen in FIG. 1 the front of the fabric body includes one or more small zippered compartments 54 for quick access. A larger zippered compartment 44 on the front of the pack can accommodate larger items for quick access. This compartment 44 is also secured by straps and quick release buckles 46. It is possible to secure larger items, such as a coil of cable to the pack 10 using the straps and buckles 46. The front of the fabric body 18 is connected to a central portion 56 by front zipper 32.

As best seen in FIG. 14, the rear of the fabric body 18 includes a padded back panel 58 and backpack straps 20 with sternum strap 21. The fabric body 18 includes a pair of elongated pockets 60 for flat aluminum bars 62 which support and distribute the weight of the pack 10 during use. A thermoformed foam back cushion 58 improves the comfort of the pack during use and includes air channels to circulate air between the user and the pack 10. The rear portion of the fabric body including the backpack straps 20 is secured to the remainder of the fabric body by rear zipper 34. The backpack straps 20 are secured to the top and bottom of the rear of the fabric body 18 as shown in FIG. 3. A sternum strap 21 with quick release connector is arranged to extend between the backpack straps 20 across the chest of a user as additional support for the pack during use. The backpack straps 20 are constructed of heavy gauge durable fabric surrounding foam padding material.

With reference to FIGS. 2-4 and 13, a pair of load positioning straps 64 extend from an upper portion of the backpack straps 20 to a metal hasp 66 configured to latch with the pin 68 of the hinge assembly 16. The load positioning straps 64 serve two functions. First, the load positioning straps 64 cross the rear main zipper 34 and support the weight of the pack directly from the hinge pin 68 of the hinge assembly 16 via the hasp 66 as shown in FIGS. 3 and 4. This arrangement removes the weight of the pack 10 from bearing on the rear main zipper 34 and instead carries the weight via the hasp 66, load positioning straps 64 and backpack straps 20. Second, the load positioning straps 64 are adjustable in length, permitting the user to control the position of the pack 10 relative to the user's body. It will be noted by those familiar with the use of backpacks that it can be useful to allow a user to adjust the position of the backpack under different circumstances. For example, when walking on an inclined surface it may be useful to add length to the load positioning straps 64 and allow the weight of the pack to extend away from the user's body for balance.

FIGS. 1-4 illustrate the hasp 66 engaged with the pin 68 of the handle assembly 16 at the top of the pack 10. FIG. 7 illustrates the hasp 66 disengaged from the handle assembly

5

16. FIGS. 8A-10B illustrate details of the hinge assembly 16 and the hasp 66 showing how the hasp is engaged to the hinge pin 68. As shown in FIGS. 8A and 8B, the hasp includes a connecting member with slots 70 for receiving the load positioning straps 64. The hasp 66 also includes a C shaped knuckle 72 configured to engage the hinge pin 68. The hinge assembly 16 includes a molded plastic handle body 74 which supports four pivot points 76 for the hinge pins 68. The handle body 74 supports each hinge pin 68 adjacent the pin's inner and outer ends. Between the pivot points 76, the handle body includes a cradle 78 configured to support the hasp knuckles 72 when engaged with the hinge pins 68. FIGS. 9A and 9B illustrate engagement of the hasp knuckles 72 with the hinge pins 68. The open side of each knuckle 72 passes over the hinge pin 68 with the free end of each knuckle 72 passing between the hinge pin 68 and the cradle 78. FIGS. 10A and 10B illustrate the hasp 66 fully engaged with the hinge pins 68 and in a position for use while the pack is worn by a user. The hasp 66 may only be engaged and disengaged from the hinge pins when the hasp is rotated into the position shown in FIGS. 8A and 8B. When the hasp is in the position shown in FIGS. 10A and 10B during use, the hasp 66 cannot be disengaged from the hinge pins 68.

The molded plastic handle body 74 includes a peripheral flange 80 where the handle body 74 is secured to the fabric body 18 of the pack 10. The handle body 74 also includes a downward extending flange 26 where the handle body 74 is connected to the central support panel 14 and organizational panels 36, 38 as discussed above. The peripheral flange 80 of the handle body 74 includes a groove 82 which facilitates stitching of the handle body 74 to the central arch of the fabric body 18 of the pack as best seen in FIGS. 3 and 4. A molded plastic handle 84 includes four lobes 86 each defining an opening for the hinge pin 68. The lobes 86 at each end of the handle 84 are spaced apart, exposing the hinge pins 68 and providing a space for the hasp knuckles 72 to engage the hinge pins 68. The handle 84 includes a grip 88 of softer material molded around the central portion of the handle 84 to improve the ergonomics and grip of the handle 84. In the disclosed embodiment, the hinge pin 68 is a 10 mm aluminum rod tapped at either end to receive a 6 mm screw 90. The hinge pin 68 is inserted through the hinge supports 76 and handle lobes 86 and secured in place by screws 90. The disclosed handle 84 folds flat at the top of the pack 10 when not in use as shown in FIGS. 8A and 8B.

FIG. 11 illustrates a hanger 92 that can be used to hang the pack 10 from any convenient support structure. The hanger 92 may be used to support the pack 10 off the ground when convenient or necessary to the user. The hanger 92 may also be employed to support the pack apart from the user while the user mounts or dismounts a ladder onto a roof or other structure. The hanger 92 includes a metal hook 94 constructed of material strong enough to support the weight of the pack 10 and its contents. The hook 94 is secured to the pack by an adjustable strap 96. The hook 94 and strap 96 are stored in a small pocket at the top rear of the pack when not in use.

FIG. 12 illustrates the pack with the front zipper 32 open and the front panel of the pack separated from the central portion 56 of the pack and secured in an open position to form a shelf. A strap 98 extends from the upper inside of the pack 10 to the upper inside of the front panel to support the front panel during use as a shelf. The shelf can provide a handy space for temporary storage of components or tools during use.

FIG. 6 illustrates the pack with the two main zippers 32, 34 open as well as the front auxiliary zipper open. Each of the main components of the fabric body is connected to the others by a gusset 100 at either side of the pack 10. The gussets 100

6

support the panels when open, preventing the fabric body 18 from collapsing to ground level which may be wet and/or dirty. The gussets 100 also prevent unnecessary stress on the main zippers 32, 34 which would result from allowing the front and rear panels of the pack 10 to open completely.

With reference to FIGS. 1-3 and FIG. 5B, the molded plastic base 12 has a configuration specifically designed to improve the fit and function of the pack 10 when worn on the back of a user. The base 12 is higher at the front and tapers to a lower rear lip at the rear of the base. The rear side 102 of the base 12 is concave to conform to the back of the user. The lowered concave rear portion 102 of the base 12 improves the comfort of the pack during use. As best seen in FIG. 5B, the base 12 includes an upstanding lip 52 above a circumferential ridge 104. As shown in FIGS. 1 and 3, the bottom end of the fabric body 18 is surrounded by a folded web 106, which is stitched to the fabric body. Rivets 50 extend through the folded web to secure the fabric body to the base.

The fabric body 18 includes an arch shaped central portion 56 extending between the front and rear panels of the fabric body 18. The central portion 56 of the fabric body is connected to the front and rear panels by the front and rear main zippers 32, 34, respectively. The arch shaped central portion 56 includes a reinforcing web material extending from one side of the base to the other over the top of the pack 10. The sides of the central portion 56 may be provided with various hooks, pockets and attachment points as shown in FIGS. 1-4. The central portion 56 of the fabric body 18 may also include PE sheet sewn between layers provide additional structural support to the fabric body 18. The reinforced central portion 56 of the fabric body 18 provides another load path for weight within the pack extending from the molded base 12 to the handle assembly 16. This load path is in addition to the connection between the handle assembly 16 and base 12 provided by the central support panel 14 and organizational panels 36, 38 as shown in FIG. 5A.

With reference to FIGS. 6 and 12, it will be observed that the central portion 56 of the fabric body 18 is asymmetrical, resulting in a pack shape conducive to use as a backpack. The asymmetrical central portion 56 shifts the rear panel of the pack 10 to a more upright position with respect to the base 12. The rear main zipper 34 meets the lip 52 of the base 12 at an angle A closer to 90° than the front main zipper 32, which meets the lip 52 at angle B as shown in FIG. 12.

Many advantages of the disclosed pack will now be apparent to those skilled in the art. Many choices of materials, components, attachment means and fasteners may be made without departing from the scope of the disclosure. Accordingly, the disclosed embodiment is to be construed as illustrative only and not limiting.

What is claimed:

1. A tool pack comprising:
   a base defining a rigid support surface and including a peripheral lip;
   a support panel substantially perpendicular to said base;
   a bag body extending from said peripheral lip to define an interior space surrounding said support panel, said bag body including at least one interior surface having a plurality of pockets, a back panel, and a pair of backpack straps each having an upper portion secured to said back panel adjacent an upper edge thereof and a lower portion secured to said back panel adjacent said peripheral lip permitting the pack to be carried on the back of a user;
   a handle assembly coupled to an upper end of said bag body opposite said base, said handle assembly including a handle base coupled to said bag body and a handle pivotably coupled to said handle base;

US 9,345,301 B2

7

a pair of adjustable length load positioning straps, each of
said load positioning straps extending from one of said
backpack straps to said handle base,

wherein said support panel divides said interior space into
two compartments and said bag body includes a revers-
ible closure mechanism arranged on opposite sides of
said handle assembly, with one said closure mechanism
intermediate said pair of backpack straps and said
handle mechanism, each reversible closure mechanism
permitting access to one of said compartments and said
load positioning straps spanning the closure mechanism
intermediate said pair of backpack straps and said
handle mechanism.

**2**. The tool pack of claim **1**, comprising a central portion of
said bag body extending between said closure mechanisms,
said central portion surrounding said support panel and con-
necting said base to said handle assembly.

**3**. The tool pack of claim **1**, wherein said support panel has
a width and height substantially equal to a width and height of
said interior space.

**4**. The tool pack of claim **1**, comprising a plurality of
pockets coupled to at least one surface of said support panel.

**5**. The tool pack of claim **1**, wherein said support panel is
permanently coupled to both said base and said handle base.

**6**. The tool pack of claim **1**, wherein said base is a substan-
tially rigid concave tub, said peripheral lip extending above
said support surface.

**7**. The tool pack of claim **1**, wherein said base includes a
bottom defining said support surface, and a side wall extend-
ing from said bottom to said peripheral lip.

**8**. The tool pack of claim **7**, wherein said side wall has a
height that varies with respect to said support surface.

**9**. The tool pack of claim **1**, wherein said bag body exterior
surface including said backpack straps is coupled to said
peripheral lip along one side of said base, said peripheral lip
and said base having a concave configuration when viewed
from outside said interior space.

**10**. The tool pack of claim **1**, wherein said pair of load
positioning straps include a coupling for reversibly connect-
ing said backpack straps to said handle base.

**11**. The tool pack of claim **1**, comprising a hasp connected
to said pair of load positioning straps, said hasp including a
coupling for reversibly connecting said pair of load position-
ing straps to said handle assembly.

8

**12**. A tool pack comprising:

a substantially rigid concave base defining a support sur-
face and including a peripheral wall projecting from said
support surface to an upstanding peripheral lip;

a fabric bag body permanently coupled to said peripheral
lip to define an interior space, said bag body including a
back panel, a pair of backpack straps each having an
upper portion secured so said back panel adjacent an
upper edge thereof and a lower portion secured to said
back panel adjacent said peripheral lip and a plurality of
pockets on at least one inside surface;

a generally rigid support panel dividing said interior space
into two compartments, said support panel bearing on
said base to support said fabric bag body with respect to
said base;

a plurality of organizational structures arranged on at least
one side of said support panel;

two reversible closure mechanisms in said bag body, each
closure mechanism permitting access to one of said
compartments;

a central portion of said bag body extending between said
closure mechanisms and surrounding a top and sides of
said support panel; and

a pair of load positioning straps, each of said load position-
ing straps extending from one of said backpack straps to
said central portion of said bag body adjacent the top of
said support panel and spanning one of said reversible
closure mechanisms.

**13**. The tool pack of claim **12**, comprising a handle mecha-
nism secured to said central portion of said bag body adjacent
the top of said support panel, said handle mechanism between
said closure mechanisms and generally aligned with said
support panel.

**14**. The tool pack of claim **13**, wherein said support panel
is coupled to both said base and said handle assembly.

**15**. The tool pack of claim **12**, wherein said load position-
ing straps are reversibly coupled to said central portion of said
bag body and when coupled to said bag body central portion,
said load positioning straps connect said backpack straps to
said bag body, thereby removing stress from said one of said
reversible closure mechanisms.

**16**. The tool pack of claim **13**, comprising a coupling on
each load positioning strap permitting the load positioning
strap to be reversibly coupled to a base of said handle mecha-
nism.

* * * * *

Exhibit B

US006915902B2

(12) **United States Patent**     (10) Patent No.:     **US 6,915,902 B2**
Brouard                          (45) Date of Patent:     **Jul. 12, 2005**

(54) **TOOL BAG**

(75) Inventor: **Roger H. Brouard**, Norwalk, CT (US)

(73) Assignee: **Veto Pro Pac, LLC**, Norwalk, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 33 days.

(21) Appl. No.: **10/263,277**

(22) Filed: **Oct. 2, 2002**

(65) **Prior Publication Data**

US 2004/0065573 A1 Apr. 8, 2004

(51) Int. Cl.⁷ .............................................. **B65D 85/28**
(52) U.S. Cl. ..................................................... **206/373**
(58) Field of Search ................................. 206/349, 372, 206/373, 375, 376, 379; 150/106, 107, 109, 110, 116; 190/102

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,174,447 A   * 12/1992 Fleming ...................... 206/373

5,423,404 A   *  6/1995 Shaw ........................ 206/372
5,848,744 A   * 12/1998 Dischner et al. ............ 206/349
5,947,286 A   *  9/1999 Chau ........................ 206/372
6,126,003 A   * 10/2000 Brouard .................... 206/372
6,138,827 A   * 10/2000 Marshall ................... 206/372
6,478,463 B2  * 11/2002 Snider ...................... 206/373

* cited by examiner

*Primary Examiner*—Luan K. Bui
(74) *Attorney, Agent, or Firm*—Michaud-Duffy Group LLP

(57)     **ABSTRACT**

A tool bag having a bag body defining an interior area and a central panel coupled to the bag body bifurcating the interior area. Openings in the bag body provide access to the interior area. A tool deflector is coupled to the central panel. At least one tool pocket is coupled to and defined in part by the tool deflector. The tool deflector is made from a suitable material such as plastic to provide a hard surface to prevent the edges of tools from damaging the central panel when placed in or removed from the tool pockets. A handle is attached to the bag body for carrying the tool bag. The tool bag provides for safe, orderly and convenient storage and transport of tools.

7 Claims, 11 Drawing Sheets





*FIG. 1*

Case 3:23-cv-01349-OAW   Document 1-3   Filed 10/16/23   Page 43 of 64



FIG. 2



*FIG. 3A*

Case 3:23-cv-01349-OAW   Document 1-3   Filed 10/16/23   Page 45 of 64



FIG. 3B



*FIG. 4*

U.S. Patent          Jul. 12, 2005          Sheet 6 of 11          US 6,915,902 B2



*FIG. 5*



FIG. 6



FIG. 7



FIG. 8

FIG. 9





FIG. 10

US 6,915,902 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# TOOL BAG

## FIELD OF THE INVENTION

The present invention relates generally to tool storage devices, and in particular, to tool bags for organizing, transporting and accessing tools.

## BACKGROUND OF THE INVENTION

There are presently a variety of carrying devices on the market designed to store and transport tools. For example, many companies sell rigid tool boxes that have a hinged top and a removable tray that lifts out for accessing a lower interior area designed for bulk tool storage. Other, similar tool boxes may include small drawers for storing smaller tools or parts. However, these types of tool boxes are usually designed to store tools horizontally, often resulting in a disorganized mass of tools in a single storage area in the bottom of the tool box. This arrangement can make selection and accessing of the stored tools somewhat difficult and potentially dangerous.

Another disadvantage of rigid tool boxes such as those described above is that, often, they do not conform to storage areas provided in vehicles. Usually tradesmen transport or store tool boxes in their vehicles, however, enough space for a rectangular hard tool box is often not available.

Other tool storage products available are fabric bags similar to doctor's bags having a zippered opening providing access to an inner cavity for storing tools. However, tools stored in this type of bag are also generally stored together, horizontally, in a single storage area. Inner pockets may be provided, although access to the inner pockets can be substantially restricted when the bag is full or partially full of tools.

Most fabric tool bags available offer an alternative to the rigid tool boxes described above, but do not overcome the problems associated with bulk tool storage. Also, when storing or transporting sharp tools horizontally or in pockets, in a purely fabric bag, the bag can easily be damaged by the tools.

Another tool storage system available is a bag designed to fit over an empty 5-gallon plastic bucket. This type of bag often has a variety of tool pockets designed to fit both on the inside and outside of the bucket. The bucket provides a frame and supports the tool bag. One disadvantage of this type of tool bag is that convenient storage space for a 5-gallon bucket is often quite limited in vehicles, making it difficult to transport the stored tools.

Based on the foregoing, it is the general object of the present invention to provide a tool bag that improves over, or overcomes the problems and drawbacks of the prior art.

## SUMMARY OF THE INVENTION

The present invention provides a tool bag having a bag body defining an interior area and a central panel coupled to the bag body that bifurcates the interior area. Openings in the bag body provide access to the interior area of the tool bag. A tool deflector is coupled to the central panel and is made from a suitable material such as plastic for providing a hard surface. At least one tool pocket is coupled to and defined in part by the tool deflector. The tool deflector is positioned to prevent the edges of tools from damaging the bag body when placed in or removed from the tool pockets. A handle is attached to the bag body for carrying the tool bag. In the preferred embodiment, the handle is pivotally coupled to the bag body such that, the handle is movable between an upstanding position when it is gripped by a user, and a normal position wherein the handle overlies the tool bag when it is not gripped by a user. Thus, the tool bag of the present invention provides for safe, orderly and convenient storage and transport of tools.

One advantage of the present invention is that the tool pockets provide for vertical storage and easy accessibility for a large number of tools of various sizes and shapes. Additionally, the tool deflector provides a hard surface that unlike purely fabric bags will not be substantially damaged by the sharpened edges of some tools. In addition, the central panel includes a substantially rigid support member coupled thereto for providing vertical support for the bag body.

Another advantage of the present invention is that the tool pockets provide separate and individual storage areas for tools wherein the stored tools are less likely to be damaged by contact with other tools during storage or transport.

Still another advantage of the tool bag of the present invention is that the organization capability provided by the tool pockets allows one to quickly and easily, inventory and access a large quantity of tools by visually scanning the interior area of the tool bag. This also helps to prevent tools from being lost or left at a job site.

The tool pockets can be designed having specific sizes and shapes to accommodate various tools so that the appropriate tools fit snugly therein. Desirably, the tool bag has tool pockets formed in rows adjacent to and supported by the central panel wherein a first row of pockets has the tool deflector forming a rear panel thereof and a front panel which also serves as a rear panel for a next successive row of tool pockets. The rows of tool pockets can be tiered providing tool pockets for longer tools to be stored in deep pockets such as the first row of tool pockets and smaller tools to be stored in successive rows of tool pockets. The bag body can also include additional tool pockets formed on end panels interior the bag body or on exterior panels thereof.

Preferably, the bag body is manufactured from a flexible material such as nylon attached to a flat bottom member formed from a hard plastic or other substantially rigid material. The central panel can be attached approximately perpendicularly to the bottom member and include a substantially rigid support member coupled thereto so that the tool bag is supported in an upstanding position. In the preferred embodiment, the central panel is formed of two fabric panels having the substantially rigid support member retained therebetween via stitches that attach the two fabric panels together surrounding the support member.

The openings in the bag body are arranged at the periphery thereof, so that in an open position, a flap of body material is attached only on one side of the opening providing access to the entire interior area of the tool bag. The flap includes pairs of cooperating fasteners attached thereto so that the flap can fold on itself and be secured in one or more positions when the tool bag is open. At least one

US 6,915,902 B2

3

opening is provided to access each of the bifurcated interior areas. Zippers are provided as closures for the openings. In this arrangement, stored tools are presented in an organized manner for convenient access by a user. Also, the tools are maintained in better condition when compared to tools stored in bulk storage tool boxes.

An ergonomically designed handle is attached to the bag body and includes a soft grip to provide comfort to the user when carrying the tool bag.

These and other features, aspects, and advantages of the present invention will become better understood with reference to the following description, drawings and appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a tool bag according to the present invention;

FIG. 2 is a side view of the tool bag of FIG. 1;

FIG. 3A is a perspective view of the bottom member of the tool bag of FIG. 1;

FIG. 3B is a partial cross-sectional end view of the tool bag of FIG. 1;

FIG. 4 is a perspective view of the handle of the tool bag of FIG. 1;

FIG. 5 is a perspective view of the tool bag of FIG. 1 in an open position;

FIG. 6 is an illustration showing the size of a first row of tool pockets in a preferred embodiment of the present invention;

FIG. 7 is an illustration showing the size of a second row of tool pockets in a preferred embodiment of the present invention;

FIG. 8 is an illustration showing the size of a third row of tool pockets in a preferred embodiment of the present invention;

FIG. 9 is an illustration showing the depth of the rows of tool pockets in a preferred embodiment of the present invention; and

FIG. 10 is a bottom side view of a bottom member of the present invention.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

As shown in FIGS. 1–5 a tool bag generally designated by the reference numeral 10 comprises a bottom member generally, 12 and a bag body generally designated by the reference numeral 14. FIG. 2 shows the bag body 14 attached to the bottom member 12 via fasteners 13.

Referring to FIG. 3A, the bottom member 12 is formed in the shape of a tray having a substantially flat bottom portion 17 and upstanding walls 18. FIG. 3B shows the bag body 14 having a central panel 15 attached to the bottom member 12 such that the central panel is secured substantially perpendicular to the bottom member 12. A plurality of rivets 19 attach the central panel 15 to the bottom member 12. The central panel 15 includes two fabric panels 21 having a substantially rigid support member 23 retained therebetween via stitches 25. A tool deflector 16 is secured to the central panel 15 on either side thereof adjacent a first row of tool

4

pockets 30 shown in FIG. 5. (FIG. 3B does not include the tool pockets.) The tool deflector 16 is constructed of an impact resistant plastic material. Alternatively, the bottom member 12 and support member 23 could be formed in one piece.

Still referring to FIGS. 1–5, the central panel 15 bifurcates the interior area 26 formed by the bag body 14 and the design and construction of the tool bag 10 on each side of the central panel is approximately identical. However, the present invention is not limited in this regard as each side of the bifurcated interior area 26 could have features different from the other side. For example, in another embodiment of the tool bag 10, the area on one side of the central panel 15 defines a single storage area while the other side has a plurality of tool pockets. The description provided herein describes the preferred embodiment of the tool bag 10 wherein the interior area 26 is approximately identical on either side of the central panel 15, thus, the interior area will be explained with reference to only one side thereof.

The bag body 14 is preferably manufactured from a ballistic nylon material for strength and durability, however any flexible material such as leather or fabric could be utilized.

First, second and third rows of tool pockets, 30, 32 and 34 are coupled to the central panel 15 and tool deflector 16. The first row 30 is defined in part by the tool deflector 16 wherein the tool deflector forms a rear wall of the first row of tool pockets 30. The tool deflector 16 provides a hard surface to prevent damage to the central panel 15 of the bag body 14 when tools are inserted or removed from the first row of tool pockets 30. As such, the tool deflector 16 is preferably manufactured from an impact resistant material such as plastic. Each successive row 32 and 34 of tool pockets is defined in part by a front panel of the preceding row as shown in FIG. 5. The rows of tool pockets 30, 32 and 34 are each constructed by stitching a panel of material to the central panel 15 in an undulating fashion so as to create each of the rows of tool pockets. In the preferred embodiment the rows of tool pockets 30, 32 and 34 are tiered wherein the first row of tool pockets 30 has an overall height greater than the overall height of the second row of tool pockets 32. Accordingly, the third row of tool pockets 34 has an overall height less than the overall height of the second row 32. A fourth row of tool pockets 38 is attached to and defined in part by the front panel of the tool pockets in row 34.

Referring again to FIGS. 1–5, a handle 40 is attached to a top surface 42 of the bag body 14. The handle 40 has a lower portion 44 disposed in a pocket 46 attached to the central panel 15 and top surface 42 of the bag body 14. Fasteners 48 are secured through the apertures 50 defined by the lower portion 44 of the handle 40 and attach the handle to the tool bag 10. The handle 40 defines an opening 52 through which a hand of the user can be inserted in to carry the tool bag 10. The opening 52 has an enlarged rib 54 for providing structural support thereto. A strap 56 extends through the opening 52 and is attached to each side of the pocket 46 to further attach the handle 40 to the bag body 14. The pocket 46 could consist of only two flaps of body material attached to the handle 40. An ergonomically styled, molded grip 58 is formed through and adjacent the opening 52 to provide comfort to the user when carrying the tool bag 10.

US 6,915,902 B2

5

Depending on a particular trade or the types of tools the tool bag is designed to accommodate, each of the rows of tool pockets, 30, 32, 34 and 38 can be arranged accordingly. In FIGS. 6–9, a first row of tool pockets, 30 has an overall height of approximately 9 inches and a width defined by the distance between the stitch lines attaching the tool pockets to the central panel 15, of approximately 2, 2.5 or 3.5 inches. The depth of the tool pockets in row 30 is approximately 1 inch measured outwardly from the central panel 15. The following references to the height, width and depth of the tool pockets are all measured in the same manner as discussed above with reference to the first row of tool pockets 30.

In other embodiments of the invention, the first row of tool pockets 30, ranges in height between approximately 8 inches to about 10 inches, in width, between approximately 1 inch to about 4 inches and the depth of the pockets ranges between approximately 0.75 inches to about 2 inches.

Referring to FIGS. 7 and 9, the preferred embodiment has a second row of tool pockets 32 having an overall height of approximately 7 inches and a width of approximately 3.5, 4 or 4.5 inches. As shown in FIG. 9, the depth of the tool pockets in row 32 is approximately 2 inches as measured outwardly from the central panel 15. In other embodiments the second row of tool pockets, 32 ranges in height between approximately 6 inches to about 8 inches, in width between approximately 3 inches to about 6 inches and the depth of the pockets ranges between approximately 1.5 inches to about 3 inches.

Referring to FIGS. 8 and 9, in the preferred embodiment, a third row of tool pockets 34 has an overall height of approximately 5 inches and a width of approximately 3.5, 4 or 4.5 inches. As shown in FIG. 9, the depth of the tool pockets in row 34 is approximately 4.375 inches. In other embodiments of the invention, a third row of tool pockets, 34 ranges in height between approximately 4 inches to about 6 inches, the width of the tool pockets is approximately 3 inches to about 6 inches and the depth of the pockets ranges between approximately 3 inches to about 6 inches.

As discussed hereinabove, in the preferred embodiment of the invention, the first, second and third rows of tool pockets 30, 32 and 34 are tiered allowing for longer tools (e.g. chisels, screwdrivers) to be stored in the taller pockets in the first row of tool pockets 30, and smaller or shorter tools to be stored in the second and third rows of tool pockets, 32 and 34. The tiered configuration of the tool pockets allows most tools to be stored vertically for easy accessibility. Each of the rows of tool pockets 30, 32 and 34 has a finishing strip 60 along the top edge thereof.

Referring to FIG. 5, a row of pockets 38 is attached to and defined in part by the preceding row of tool pockets 34. Tool pockets 62 are attached to and defined in part by the end panel 64. A tool pocket 66 having a zipper closure 68 is attached to and defined in part by the central panel 15 of the bag body 14.

As shown in FIG. 1, the bag body 14 has reinforcement straps 70 sewn on all sides thereof providing additional support and durability to the bag body. A trim strip 72 is stitched to the central panel 15 and an upper edge of the tool deflector 16 providing additional support as well as a

6

decorative trim thereto. Zipper closures 74 are disposed at the openings of each of the bifurcated areas of the bag body 14. In the FIG. 1 embodiment, the openings in the bag body 14 for accessing the interior area 26 are dispossed at a periphery of the bag body 14.

Referring again to FIG. 1, a tool pocket 76 is attached to and defined in part by an outer surface of the bag body 14. The tool pocket 76 has a zipper 78 providing a closure mechanism at the opening thereof. Attached to the end panels 64 of the bag body 14 are rings 80 for securing a detachable carrying strap 82 to the tool bag 10. Referring to FIGS. 1 and 5, rings 84 and 86 are attached to the cover panel 88 and the central panel 15 respectively, for securing articles to the both the exterior and interior of the tool bag 10. In other embodiments of the invention, other types of couplers could be utilized in place of the rings 84 and 86 for attaching articles to the tool bag 10.

Referring to FIG. 10, the bottom member 12 defines frangible areas 94 forming optional drains for the interior area 26. These frangible areas 94 could be broken away by a user should drainage of the interior be desired. Alternatively, drain openings could be provided in the bottom member 12 of the tool bag 10.

A user of the tool bag 10 of the present invention can open one or both of the cover panels 88 of the bag body 14 by unzipping the zippers 74 thereby providing access to each of the bifurcated interior areas of the tool bag. (FIG. 5 shows the tool bag 10 having one of the cover panels 88 in an open position). Each cover panel 88, when in an open position, can be folded on itself and secured adjacent the lower portion of the bag body using one or both pairs of snap fasteners 90 and 92. This retains the cover panel 88 in a secured position while the tool bag 10 is in an open position and prevents damage to the cover panel and the zipper 74.

Once opened, the various pockets formed by the first, second, third and fourth rows of tool pockets 30, 32, 34 and 38 as well as the tool pockets 62 and 66 can be loaded with tools. The tiered configuration of the tool pockets allows the tools to be stored vertically for easy accessibility and inventory. Tools and other items can be also stored in the tool pockets 76 located on the cover panels 88. Once the tool bag 10 is loaded, the cover panels 88 can be returned to their closed position using the zipper closure members 74 (see FIG. 1). In the closed position, the tools are retained in the tool pockets interior the tool bag 10 in such a way that the tools will not come out of the tool pockets during carrying and transport of the tool bag even in the event the tool bag is accidentally knocked over onto a side thereof. The central panel 15 and support member 23 also help balance the load of tools so that the tool bag 10 can be easily carried by the user.

Thus, it can be seen from the foregoing specification and attached drawings that the tool bag of the present invention provides an effective means for carrying and accessing tools stored therein. It is believed that the many advantages of this invention will now be apparent to those skilled in the art. It will also be apparent that a number of variations and modifications may be made to the tool bag without departing from the spirit and scope of the invention. Accordingly, the foregoing description is to be construed as illustrative only, rather than limiting.

US 6,915,902 B2

What is claimed is:

1. A tool bag comprising:

a bag bottom having a flat surface;

a bag body extending from a periphery of the bag bottom, the bag body coupled to the bag bottom and including at least one fabric body portion positioned substantially centrally of and extending from said bag bottom, said at least one fabric body portion being non-removably coupled to said bag bottom;

said fabric body portion forming in-part at least one interior area, and having a plurality of pockets, at least one of said pockets being positioned within another of said pockets such that an outer surface of said at least one of said pockets forms an inner surface of said another of said pockets, each of said pockets being at least partially coupled to said fabric body portion;

said bag body further including a central, generally rigid panel-like member positioned adjacent to said at least one fabric body portion and extending substantially normal to said bag bottom, said rigid panel-like member being cooperative with said fabric body portion to bifurcate an interior area defined by said fabric body portion into only two interior compartments; and

a single handle hingedly attached to said fabric body portion of said bag body and positioned centrally of,

longitudinally along, and extending outwardly from a top outermost surface defined by said bag body, said handle being movable relative to said top outermost surface and movable relative to said central panel.

2. A tool bag as defined by claim 1 wherein said bag body is coupled to said bag bottom.

3. A tool bag as defined by claim 1 wherein at least a portion of said bag bottom is substantially rigid.

4. A tool bag as defined by claim 1 wherein said bag body defines at least two zippers each for at least partially closing said bag body.

5. A tool bag as defined by claim 1 wherein said pockets of said plurality of pockets are arranged in rows.

6. A tool bag as defined by claim 1, wherein said bag body is operably openable so that at least one of said interior areas is exposed, and wherein said bag body defines at least one flap when in an open position.

7. A tool bag as defined by claim 1, wherein a grip is formed through and adjacent an opening of said single handle.

*   *   *   *   *

Exhibit C

US00D613507S

(12) **United States Design Patent**     (10) Patent No.:     **US D613,507 S**
Brouard                                   (45) Date of Patent:     ** Apr. 13, 2010**

(54) **OPEN TOP CARRIER**

(75)  Inventor:     **Roger Brouard**, Norwalk, CT (US)

(73)  Assignee:    **Veto Pro Pac, LLC**, Norwalk, CT (US)

(**)  Term:     **14 Years**

(21)  Appl. No.:    **29/288,126**

(22)  Filed:     **May 30, 2007**

(51)  **LOC (9) Cl.**   .................................................. **03-01**
(52)  **U.S. Cl.**   ....................................... **D3/315**; D3/905
(58)  **Field of Classification Search**   .................   D3/20,
          D3/26, 201, 304, 307–311, 315, 318–319,
          D3/321–322, 905, 292;  206/1.7–1.9, 372–373
     See application file for complete search history.

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D176,844 | S | * | 2/1956 | Evans ............................ D3/309 |
| 2,740,517 | A | * | 4/1956 | Evans ............................ 206/373 |
| D273,207 | S | * | 3/1984 | Clanton ........................ D3/309 |
| D325,280 | S | * | 4/1992 | Nelson ......................... D3/309 |
| D327,562 | S | * | 6/1992 | Brightbill ..................... D3/308 |
| D346,682 | S | * | 5/1994 | Trovato ........................ D3/308 |
| D376,454 | S | * | 12/1996 | Fierek et al. ................ D32/54 |
| D376,477 | S | * | 12/1996 | Patterson, Jr. ............... D3/304 |
| D414,337 | S | * | 9/1999 | Hubert .......................... D3/315 |
| D420,221 | S | * | 2/2000 | Williams et al. ............. D3/315 |
| D426,384 | S | * | 6/2000 | Brouard ....................... D3/276 |
| 6,085,902 | A | * | 7/2000 | Fang ............................ 206/373 |
| 6,126,003 | A | * | 10/2000 | Brouard ....................... 206/372 |
| D474,891 | S | * | 5/2003 | Huang .......................... D3/309 |
| 6,571,998 | B2 | * | 6/2003 | Godshaw et al. ........... 224/607 |
| D490,245 | S | * | 5/2004 | Brouard ........................ D3/318 |
| 6,810,933 | B2 | * | 11/2004 | Gordon et al. .............. 150/112 |
| D502,599 | S | * | 3/2005 | Cabana et al. ............... D3/292 |
| D524,544 | S | * | 7/2006 | Crook .......................... D3/319 |
| D553,362 | S | * | 10/2007 | Godshaw et al. ............ D3/310 |
| 7,314,126 | B2 | * | 1/2008 | Godshaw et al. .......... 190/18 A |
| 7,314,133 | B2 | * | 1/2008 | Redzisz ....................... 206/373 |
| 2008/0179370 | A1 | * | 7/2008 | Williams .................... 224/682 |
| 2008/0202962 | A1 | * | 8/2008 | Brouard ...................... 206/373 |
| 2008/0230416 | A1 | * | 9/2008 | Brouard ...................... 206/372 |

OTHER PUBLICATIONS

Bucket Boss Brand 06004 GateMouth Tool Bag. Downloaded Sep. 30, 2008 at http://www.amazon.com/dp/B00002243C?smid=A31AW2OZADFE8G&tag=nextag-tools-tier4-20&linkCode=asn.*
Open Top Tool Bags. Downloaded Sep. 28, 2008 at http://www.vetopropac.com/products/default.asp?id=267.*

* cited by examiner

*Primary Examiner*—Adir Aronovich
*Assistant Examiner*—Roselynne Cody
(74) *Attorney, Agent, or Firm*—Michaud-Kinney Group LLP

(57)                **CLAIM**

The ornamental design for an open top carrier, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a open top carrier showing the design of the present invention;

FIG. **2** is a plan view thereof;

FIG. **3** is a front elevation view thereof;

FIG. **4** is a right elevation view thereof;

FIG. **5** is a left elevation view thereof; and,

FIG. **6** is a rear elevation view thereof.

In the figures four types of broken lines are used. Single lines of long dashes are meant to enclose unclaimed areas. Two closely spaced lines of long dashes delineate fabric of substantial thickness overlaid on an underlying substrate of material all of which is also unclaimed. Lines composed of short dashes are lines of stitching lying within the claimed subject matter. Lines of evenly spaced dots are meant to connote lines of stitching which are in unclaimed areas of the present invention.

**1 Claim, 6 Drawing Sheets**





FIG.1



FIG.2



FIG.3



# FIG.4



# FIG.5



FIG.6