## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VETO PRO PAC, LLC,

           Plaintiff,

v.

VELOCITY WORKWEAR LTD. d/b/a

VELOCITY PRO GEAR, and TOOL
MONSTER LTD.

           Defendants.

Civil Action No. 3:23-cv-01349-OAW

## [PROPOSED] THIRD AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Veto Pro Pac, LLC, by and through its attorneys, Dilworth IP, LLC, hereby files its Third Amended Complaint, together with a motion for leave from the Court, pursuant to Fed. R. Civ. P. 15(a)(2). Plaintiff alleges and states as follows:

### THE PARTIES

1.    Plaintiff Veto Pro Pac, LLC (hereinafter "Veto Pro Pac" or "Plaintiff") is a Connecticut Limited Liability Company having a place of business at 3 Morgan Avenue, Norwalk, Connecticut 06851.

2.    Upon information and belief, Defendant Velocity Workwear Ltd. d/b/a Velocity Pro Gear (hereinafter "Velocity") is a company organized under the laws of the United Kingdom having a place of business at Unit 4, Broadfield Barns, Kidderminster Road, Droitwich, WR9 0PP, United Kingdom.

3.    Upon information and belief, Defendant Tool Monster Ltd. (hereinafter "Tool Monster" or, collectively with Velocity, "Defendants") is a company organized under the laws

of the United Kingdom having a place of business at 80 Milecross Road, Newtownards, Co. Down, Northern Ireland, BT23 4SR, United Kingdom.

4.      Velocity is owned by BAM Investire, Ltd. and Velocity, BAM Investire, Ltd., and Tool Monster have the same Director, Adam Bertie John Gilmore.

## JURISDICTION AND VENUE

5.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq. and for violations of the Lanham Act, 15 U.S.C. § 1051 et seq., as it relates to trade dress.

6.      This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 1338.

7.      This Court has personal jurisdiction over Defendants in accordance with the Connecticut long-arm statute and due process.

8.      Upon information and belief, Defendants have marketed to customers in the United States including Connecticut, through its website, social media, influencers, and distributors, and has offered to sell and/or sold its products to customers in Connecticut, directly and through distributors, facilitating and/or enabling users to purchase the infringing goods from and in Connecticut.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and/or (3) because this is the judicial district where a substantial part of the events giving rise to the claims occurred and where Defendants are subject to personal jurisdiction.

## BACKGROUND AND FACTS

10.     Plaintiff is a leader in the manufacture and sale of premium tool bags and backpacks for trades professionals in the United States and abroad.

2

11.     For over twenty years, Plaintiff has built and maintained a reputation amongst trades professionals for providing high quality and dependable tool bags.

12.     Plaintiff is the owner of U.S. Patent No. 9,345,301, for a Supported Composite Tool Pack, issued by the United States Patent Office on May 24, 2016 (hereinafter referred to as "the '301 patent"). A true and correct copy of the '301 patent is attached hereto as Exhibit A.

13.     Plaintiff is the owner of now expired U.S. Patent No. 6,915,902, for a Tool Bag, issued by the United States Patent Office on July 12, 2005 (hereinafter referred to as "the '902 patent"). A true and correct copy of the '902 patent is attached hereto as Exhibit B.

14.     Plaintiff is the owner of U.S. Design Patent No. D613,507, for an Open Top Carrier, issued by the United States Patent Office on April 13, 2010 (hereinafter referred to as "the '507 patent"). A true and correct copy of the '507 patent is attached hereto as Exhibit C.

15.     Plaintiff has and continues to give notice to the public that its products are patented, in accordance with 35 U.S.C. § 287, by fixing the number(s) of the patent(s) on its products and/or or by fixing thereon an address of a posting on the Internet that associates the patented article(s) with the number(s) of the patent(s).

16.     Plaintiff designs its products with distinctive, non-functional, features that customers associate with Veto Pro Pac.

17.     Plaintiff owns trade dress rights in its products, namely its tool bags, protected under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

18.     Defendant Velocity entered the market after Plaintiff using the name "Velocity Pro Gear," which is confusingly similar to "Veto Pro Pac," and has been systematically duplicating Plaintiff's product offerings and imitating Plaintiff.

3

19.     Defendant Velocity's website replicates the look and feel of Plaintiff's website with the same color scheme and a landing page having substantially similar navigation features and icons "to find your perfect tool bag."

20.     On or about November 30, 2020, counsel for Plaintiff wrote to Defendant Velocity putting Defendant Velocity on notice of its infringement of the '301 patent, the '902 patent, and Plaintiff's trade dress rights.

21.     On or about December 7, 2020, Defendant Velocity alleged through counsel that it was not selling any of the accused products in the United States.

22.     After December 7, 2020, Defendant Velocity's products continued to be offered for sale and sold, directly and through distributors, to customers in the United States.

23.     On or about June 13, 2022, counsel for Plaintiff again wrote to Defendant Velocity regarding its continued infringement of the '301 patent, the '902 patent, and Plaintiff's trade dress rights, and its infringement of the '507 patent.

24.     On or about June 29, 2022, counsel for Defendant Velocity responded alleging that any shipments to the United States were unplanned and therefore likely limited in number.

25.     On or about August 4, 2022, counsel for Plaintiff wrote to Defendant Velocity requesting assurances that its infringing conduct would cease and requesting an accounting of Defendant Velocity's sales in the United States. No response was received from Defendant Velocity or its counsel.

26.     Defendant Velocity's products continue to be offered for sale and sold, directly and/or through distributors, to customers in the United States.

27.     Defendant Velocity encourages customers outside of the United Kingdom to order its products from its partner, Defendant Tool Monster, also based in the United Kingdom.

4

28.     Defendant Tool Monster has and continues to offer to sell, sell, and ship Defendant Velocity's products to customers in the United States.

29.     Defendant Tool Monster's website offers shipping to the United States for Defendant Velocity's products and Defendant Tool Monster has shipped, and upon information and belief continues to ship, Defendant Velocity's products to the United States, including to Connecticut.

30.     Plaintiff has been harmed, and will continue to be harmed, by Defendants' infringement.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,345,301

31.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

32.     Defendants have directly and/or indirectly infringed the '301 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice one or more claims of the '301 patent in violation of 35 U.S.C. § 271.

33.     Defendants have directly infringed, and upon information and belief continue to directly infringe, at least claims 12-15 of the '301 patent by offering to sell, selling and/or importing into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

34.     Defendants have indirectly infringed, and upon information and belief continue to indirectly infringe, at least claims 12-15 of the '301 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

5

35.     Defendants have directly infringed, and upon information and belief continue to directly infringe, at least claims 12-15 of the '301 patent by offering to sell, selling and/or importing into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

36.     Defendants have indirectly infringed, and upon information and belief continue to indirectly infringe, at least claims 12-15 of the '301 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

37.     Plaintiff has been harmed, and will continue to be harmed, by Defendants' infringement of the '301 patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,915,902

38.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

39.     Though the '902 patent expired in November 2022, past damages for infringement of the '902 patent occurring prior to expiration are recoverable and sought in this action.

40.     Defendant Velocity has directly and/or indirectly infringed the '902 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice one or more claims of the '902 patent in violation of 35 U.S.C. § 271.

41.     Prior to the expiration of the '902 patent, Defendant Velocity directly infringed claims 1-7 of the '902 patent by offering to sell, selling and/or importing into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

6

42.     Prior to the expiration of the '902 patent, Defendant Velocity indirectly infringed claims 1-7 of the '902 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 4.5 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

43.     Prior to the expiration of the '902 patent, Defendant Velocity directly infringed claims 1-7 of the '902 patent by offering to sell, selling and/or importing into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(a).

44.     Prior to the expiration of the '902 patent, Defendant Velocity indirectly infringed claims 1-7 of the '902 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 5.0 backpack and variations thereof in violation of 35 U.S.C. § 271(b).

45.     Plaintiff has been harmed by Defendant Velocity's infringement of the '902 patent.

## COUNT III – INFRINGEMENT OF U.S. DESIGN PATENT NO. D613,507

46.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

47.     Defendants have directly and/or indirectly infringed the '507 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice the claim of the '507 patent in violation of 35 U.S.C. § 271.

48.     Defendants have directly infringed, and upon information and belief continue to directly infringe, the claim of the '507 patent by offering to sell, selling and/or importing into the United States the Rogue PB 8.0 bag and variations thereof in violation of 35 U.S.C. § 271(a).

7

49.     Defendants have indirectly infringed, and upon information and belief continue to indirectly infringe, the claim of the '507 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue PB 8.0 bag and variations thereof in violation of 35 U.S.C. § 271(b).

50.      Defendants have directly infringed, and upon information and belief continue to directly infringe, the claim of the '507 patent by offering to sell, selling and/or importing into the United States the Rogue 3.0 open tote and variations thereof in violation of 35 U.S.C. § 271(a).

51.     Defendants have indirectly infringed, and upon information and belief continue to indirectly infringe, the claim of the '507 patent by actively inducing others to offer to sell, sell and/or import into the United States the Rogue 3.0 open tote and variations thereof in violation of 35 U.S.C. § 271(b).

52.     Plaintiff has been harmed, and will continue to be harmed, by Defendants' infringement of the '507 patent.

## COUNT IV – UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. 1125(a) – FALSE DESIGNATION OF ORIGIN AND TRADE DRESS

53.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

54.     Plaintiff has valid and protectable rights in the distinctive trade dress for the overall look of several of its tool bags.

55.     Plaintiff's trade dress includes a combination of elements making up the overall look of certain VETO PRO PAC products.

8

56.     The combination of elements in Plaintiff's trade dress includes a uniquely shaped base with exposed rivets, a distinctive handle, grey pocket reinforcements, and black and grey color schemes with orange-accented badges.

57.     The base is a rigid base extending at least partially up the front, back and sides of the bag, a generally smooth outer surface, rounded front and back corners, and a rounded bottom edge leading to an inset footprint on the bottom. A webbed material extends around the top of the base, between the base and a fabric upper, with exposed rivets (see element A in the images below).

58.     The handle is a single rigid curved black handle over the top of the bag with a textured upper surface including parallel ridges (see element B in the images below).

59.     The trade dress further includes pockets with upwardly facing openings having distinctive grey pocket reinforcements (see element C in the images below).

60.     The black and grey color schemes include a black rigid base with black webbed material around the top, a black handle, black and grey fabric, black and grey exterior pockets, two parallel vertical strips of grey and/or black webbed material extending up the front of the bag, and an orange-accented badge in between the vertical strips (see element D in the images below).

61.     This combination of elements, taken together, provides a distinctive overall look. Upon information and belief, Plaintiff's trade dress is distinctive because no other entity offers tool bags having this unique combination of specific elements.

62.     Examples of other tool bags on the market lacking the unique combination of elements are shown below:

9

 

63. The above examples lack all of the above features, including the handle, the base with exposed rivets and an inset footprint on the bottom, the grey pocket reinforcements, and the color scheme.

64. The trade dress is common to at least Plaintiff's TECH PAC, TECH-MC, TECH-MCT, TECH-LC, TECH PAC MC, TECH-XL, TECH-XXL, TECH OT-LC, TECH OT-MC, TECH PAC WHEELER, TECH-LC WHEELER, TECH-LCT WHEELER, and TECH-XL WHEELER. Examples of such products are shown below illustrating the base (A), handle (B), grey pocket reinforcements (C), and black and grey color schemes with orange-accented badges (D) as described above.

10



VETO PRO PAC TECH PAC



VETO PRO PAC TECH PAC



VETO PRO PAC TECH PAC



VETO PRO PAC TECH-MC

11





VETO PRO PAC TECH OT-MC

VETO PRO PAC TECH OT-LC

65.     The combination of elements in Plaintiff's trade dress is non-functional. The combination is not essential to the use or purpose of the bags, nor does it affect the cost or quality.

66.     The protection of this combination does not put competitors at a significant disadvantage. Countless other variations and arrangements of elements are available and practiced by other tool bag manufacturers.

67.     There are many other ways to configure the look of the base, including different shapes, e.g., without rounded corners or an inset footprint, different textures and surfaces, and different ways to visually represent the attachment between the base and fabric upper.

68.     Several other tool bag manufacturers have rigid bases that do not look like Plaintiff's, such as bases with sharp edges and no, or visually obscured, rivets. Notably, before

12

changing to the Rogue product line, Defendant Velocity offered a Raptor product line with a rigid base that was not shaped like Plaintiff's base, nor did it have exposed rivets.

69.     There are many other ways to configure the look of the handle. Many different shapes and textures of handles are used by other tool bag manufacturers, including by Velocity on some of its other bags.

70.     Having upwardly facing pockets with grey reinforcement material on the tops of the pocket edges is non-functional. Any other color or look of the pockets could be adopted.

71.     The black and grey color scheme with two parallel vertical strips of grey and/or black webbed material on the front of the bag and an orange-accented badge in between the strips is purely ornament and does not serve any function.

72.     Plaintiff's trade dress has secondary meaning and the primary significance in the minds of the public is to identify the source of the products.

73.     Plaintiff's products embodying the above-described combination of elements have been exclusively offered by Plaintiff since at least as early as 2012. At least some of the distinctive elements, including the base and handle, have been used and exclusively offered by Plaintiff since at least as early as 2002.

74.     Plaintiff has been successful in selling its products incorporating the trade dress. Plaintiff is the market leader in the premium tool bag market and its sales have increased over ten times since the products embodying the above-described combination of elements were introduced, and a substantial portion of Plaintiff's sales are attributed to such products.

75.     Third parties often try to plagiarize Plaintiff's trade dress. Numerous copycat companies have offered to sell tool bags incorporating Plaintiff's trade dress and caused confusion with customers, potential customers, and authorized distributors as to whether

13

Plaintiff was the source. As discussed below, Defendants have plagiarized Plaintiff's trade dress resulting actual confusion as to the source of Defendants' products.

76.     Defendants have and continue to systematically duplicate Plaintiff's product offerings and imitate Plaintiff in violation of Plaintiff's trade dress rights.

77.     Velocity first entered the tool bag market with a line of bags sold under the name "Raptor." These bags did not share all of the above elements of Plaintiff's trade dress.

78.     In or about 2019 or 2020, Velocity began introducing products incorporating Plaintiff's trade dress. Upon information and belief, this was done with knowledge of Plaintiff's products and trade dress and an intent to copy.

79.     Upon information and belief, around the time Velocity was introducing its new Rogue product line, Velocity began a relationship with a brand ambassador who had until then been publishing online reviews of Plaintiff's products. Upon information and belief, this brand ambassador has and continues to contribute to the design of Velocity's products.

80.     Plaintiff's trade dress is replicated in several of Velocity's Rogue products including the Rogue 4.5 and Rogue 5.0 backpacks and the Rogue 4.0, Rogue 4.0XS, Rogue 6.0, Rogue 2.0, Rogue 3.0 (including XS and XL), and Rogue 8.0 tool bags. Examples images, obtained from Defendants' websites, are provided below with the trade dress elements labeled as A-D.

14



VELOCITY PRO GEAR
ROGUE 5.0



VELOCITY PRO GEAR
ROGUE 5.0



VELOCITY PRO GEAR
ROGUE 5.0



VELOCITY PRO GEAR
ROGUE 4.5

15



VELOCITY PRO GEAR
ROGUE 4.0



VELOCITY PRO GEAR
ROGUE 3.0



VELOCITY PRO GEAR
ROGUE 3.0

16




VELOCITY PRO GEAR
ROGUE 8.0 PB



VELOCITY PRO GEAR
ROGUE 8.0 PB

81.     Plaintiff's ownership and exclusive use in commerce of the trade dress for tool bags predates the use by Defendants of the same source identifying characteristics on its tool bags.

82.     Upon information and belief, Defendants' Rogue products identified above are intended to capitalize on and free ride off of the success that Plaintiff has achieved with its unique combination of elements on its bags.

83.      Defendants' conduct is likely to cause confusion as to the source of its products and has indeed caused actual confusion.

84.     Plaintiff and Defendants sell the relevant goods through overlapping sales channels including but not limited to selling their goods to trades professionals, through the internet and distributors, and promoting their products through ambassadors on social media and YouTube.

85.     Plaintiff's trade dress is strong and well known among trades professionals, and the products and services offered by the parties are very similar.

17

86.     While Defendants label their products with the name "Velocity," "Velocity Pro Gear," and/or a prominent "V", rather than "Veto" or "Veto Pro Pac," their use of similar names and the same or substantially similar colors in their logos minimizes the likelihood of consumers distinguishing the products based on the name and evidences an intent to conceal the origin.

87.     Consumers have expressed confusion as to whether Velocity's Rogue products are made by the same manufacturer as Plaintiff's products.

88.     Consumers have inquired whether there is a relationship between Plaintiff and Velocity based on the overall look of the Rogue products.

89.     Consumers have contacted Plaintiff, believing Plaintiff to be the supplier of Rogue products, to inquire about the purchase of Rogue products, request discounts on volume orders of Rogue products, and inquire about shipping Rogue products to the United States.

90.     A corporate customer of Plaintiff expressed confusion about the origin of the Velocity Rogue 4.5 backpack and inquired whether the Velocity Rogue 4.5 backpack was a private label bag made by Plaintiff.

91.     On social media, users have confused Velocity Rogue products, including the Rogue 3.0 and Rogue 5.0, for being Plaintiff's products and have referred to and tagged Velocity Rogue products as being from Veto Pro Pac.

92.     Upon information and belief, the confusion is due to Velocity's adoption of Plaintiff's trade dress and copying of the overall look of Plaintiff's products identified above.

93.     Defendants' conduct is likely to cause initial interest, forward, reverse, and/or post-sale confusion, to the irreparable harm and detriment of the Plaintiff and the substantial goodwill it has developed in its trade dress, its brand, and with its consumers.

4857-6340-9823, v. 1

94.     Defendants use the confusingly similar trade dress in connection with its tool bags, as described above, in interstate commerce in connection with the sale, offering for sale, and distribution, and/or advertising of its tool bags.

95.     Defendants' use in commerce of the confusingly similar trade dress, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff and/or as to the origin, sponsorship, or approval by Plaintiff of Defendants' goods, services, or commercial activity.

96.     Plaintiff has been harmed, and will continue to be harmed, by Defendants' actions in violation of 15 U.S.C. § 1125(a).

97.     Upon information and belief, Defendants' conduct is willful and intentional. Defendants are and were, at all relevant times, both actually and constructively aware of Plaintiff's prior use and ownership of the trade dress, and therefore Defendants' conduct is also willful and intentional. Upon information and belief, Defendant Velocity continued to sell in the United States while misrepresenting to Plaintiff that it did not sell its products in the United States, had no plans to do so in the future, and that any sales were unplanned.

## COUNT V – CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUPTA")

98.     Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     Pursuant to the Connecticut Unfair Trade Practices Act (hereinafter "CUPTA"), Conn. Gen. Stat. § 42-110a, et seq., it is unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

19

100.     By engaging in the acts alleged above, Defendants have willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness.

101.     Defendants have benefitted, and continue to benefit, from the unlawful use of Plaintiff's trade dress, deceiving both current and potential customers.

102.     Defendants' willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

103.     Defendants' conduct has caused and will continue to cause substantial injury to Plaintiff and to the public interest.

104.     Defendants committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

105.     Plaintiff has suffered, and if Defendants are not enjoined will continue to suffer, an ascertainable loss of money or property as a result of Defendants' actions.

106.     By virtue of the above conduct, Defendants have engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of CUPTA, Conn. Gen. Stat. § 42-110a, et seq.

107.     Defendants' continued unlawful and unfair trade practices is causing and will cause Plaintiff irreparable harm.

108.     A copy of this Complaint has been mailed to the Attorney General as required by Conn. Gen. Stat. § 42-110g(c).

## COUNT VI – COMMON LAW UNFAIR COMPETITION

109.    Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

110.    Defendants' conduct as described above, namely Defendants' unlawful use of Plaintiff's trade dress, constitutes unfair competition under common law of the state of Connecticut.

111.    Defendants' actions have damaged Plaintiff and Plaintiff has and will continue to be irreparably harmed unless Defendant is enjoined by this Court.

## DEMAND FOR JURY TRIAL

112.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on all issues so triable.

4857-6340-9823, v. 1

**PRAYER FOR RELIEF**

Plaintiff prays for relief and demand judgment as follows:

1.      That judgment be entered that Defendants have infringed one or more of the asserted patents, directly and indirectly, by way of inducement or contributory infringement, literally or under the doctrine of equivalents;

2.      That, in accordance with 35 U.S.C. § 283, Defendants and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from (1) infringing the asserted patents and (2) making, using, selling, and offering for sale the infringing products;

3.      That judgment be entered that (i) Defendants' use of the confusingly similar trade dress in connection with its tool bags constitutes false designation of origin in violation of 15 U.S.C. § 1125; (ii) Defendants have infringed Plaintiff's trade dress in violation of 15 U.S.C. § 1125; and that both of the foregoing wrongful activities by Defendants were willful.

4.      That this court enter an injunction against further infringement and false designation of origin concerning Plaintiff's trade dress for tool bags, and further unfair competition and unfair or deceptive acts or practices related thereto, by Defendants and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, including at least from selling, offering to sell, distributing, importing, or advertising infringing products, or any other products that use a copy, reproduction, or colorable imitation of the Plaintiff's trade dress.

5.      That Defendants be ordered to provide an accounting of all sales in and to the United States, directly and through distributors or other third parties;

22

4857-6340-9823, v. 1

6.      An award of damages, including actual damages and/or Defendants' profits, under

35 U.S.C. § 284, 15 U.S.C. § 1117, and/or Conn. Gen. Stat. § 42-110g;

7.      That the case be found exceptional under 35 U.S.C. § 285;

8.      An award of attorneys' fees under 35 U.S.C. § 285, 15 U.S.C. § 1117, and/or Conn.

Gen. Stat. § 42-110g;

9.      Costs and expenses in this action;

10.     An award of prejudgment and post-judgment interest; and

11.     Such other and further relief as the Court may deem just and proper.


Dated:          February 7, 2024

                        **DILWORTH IP, LLC**

                        Attorneys for Plaintiff

                        /s/ Benjamin J. Lehberger
                        Benjamin J. Lehberger, Esq. (CT26880)
                        Julie Tolek, Esq. (*pro hac vice*, MA 688697)
                        470 James Street, Suite 007
                        New Haven, Connecticut 06513
                        Phone: (203) 220-8496
                        blehberger@dilworthip.com
                        jtolek@dilworthip.com
                        dilworthip@dilworthip.com

                        Richard J. Basile
                        Benjamin C. White
                        Murtha Cullina LLP
                        107 Elm Street, Four Stamford Plaza
                        Stamford, Connecticut 06902
                        Phone: (203) 653-5400
                        rbasile@murthalaw.com
                        bwhite@murthalaw.com

4857-6340-9823, v. 1

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the

Court's electronic filing system this 7th day of February, 2024.

/s/ Benjamin J. Lehberger
Benjamin J. Lehberger

24

Exhibit A

US009345301B2

(12) **United States Patent**
Brouard et al.

(10) Patent No.: **US 9,345,301 B2**
(45) Date of Patent: **May 24, 2016**

(54) **SUPPORTED COMPOSITE TOOL PACK**

(71) Applicant: **Veto Pro Pac, LLC**, Norwalk, CT (US)

(72) Inventors: **Roger Brouard**, Norwalk, CT (US); **Lee Griswold**, Bethel, CT (US); **Rui Henriques**, Wolcott, CT (US); **Ken Benson**, Southbury, CT (US)

(73) Assignee: **Veto Pro Pac, LLC**, Norwalk, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 87 days.

(21) Appl. No.: **14/142,857**

(22) Filed: **Dec. 29, 2013**

(65) **Prior Publication Data**

US 2014/0239024 A1     Aug. 28, 2014

**Related U.S. Application Data**

(60) Provisional application No. 61/769,219, filed on Feb. 26, 2013.

(51) **Int. Cl.**
| | |
|---|---|
| *A45F 3/04* | (2006.01) |
| *A45C 13/36* | (2006.01) |
| *A45C 13/02* | (2006.01) |
| *A45F 3/14* | (2006.01) |

(52) **U.S. Cl.**
CPC . **A45C 13/36** (2013.01); **A45F 3/04** (2013.01); *A45C 2013/026* (2013.01); *A45F 2003/146* (2013.01); *A45F 2200/0575* (2013.01)

(58) **Field of Classification Search**
CPC ... A45F 3/04; A45F 2200/0575; A45C 13/02; A45C 13/026; A45C 13/36
USPC ................................... 224/627; 206/372, 373
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D198,236 | S | * | 5/1964 | Schaefer | D3/308 |
| 3,960,300 | A | * | 6/1976 | Dickler | 224/629 |
| 4,720,021 | A | * | 1/1988 | Byrns | 220/764 |
| D314,279 | S | * | 2/1991 | Hotchkiss | D3/309 |
| 5,090,604 | A | | 2/1992 | Howe | |
| D325,280 | S | * | 4/1992 | Nelson | D3/309 |
| D329,135 | S | * | 9/1992 | Embree | D3/308 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 2233254 | A1 | 9/2010 |

OTHER PUBLICATIONS

International Search Report and Written Opinion mailed Apr. 17, 2014 (PCT/US2013/078168).

*Primary Examiner* — Justin Larson
(74) *Attorney, Agent, or Firm* — Alix, Yale & Ristas, LLP

(57) **ABSTRACT**

A supported composite tool pack according to aspects of the disclosure includes a concave plastic base coupled to a durable fabric body. A substantially rigid support panel divides the interior of the pack and supports the fabric body and contents of the pack with respect to the base. The pack includes a pair of backpack straps permitting the pack to be worn on the back of a user, while keeping both hands free for opening doors, hatches or scaling ladders. The fabric body defines a plurality of organizational structures inside the pack, including but not limited to closed and open pockets, rings and clips for the placement of tools, spare parts and other equipment. The base and support panel maintain the pack and its contents in an upright and accessible position when open or closed, giving the user a stable, protected work platform no matter the environment.

**16 Claims, 15 Drawing Sheets**



## US 9,345,301 B2

Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,209,384 | A | | 5/1993 | Anderson |
| D376,477 | S | * | 12/1996 | Patterson, Jr. .................. D3/304 |
| 6,039,205 | A | * | 3/2000 | Flink ......................... 220/659 |
| D426,384 | S | * | 6/2000 | Brouard ....................... D3/276 |
| 6,126,003 | A | * | 10/2000 | Brouard ....................... 206/372 |
| 6,460,697 | B1 | * | 10/2002 | Stevens ....................... 206/225 |
| 6,571,998 | B2 | * | 6/2003 | Godshaw et al. .............. 224/607 |
| 6,626,342 | B1 | * | 9/2003 | Gleason ....................... 224/633 |
| 6,651,853 | B2 | * | 11/2003 | Higgins et al. ............... 224/155 |
| D487,345 | S | * | 3/2004 | Brouard ....................... D3/289 |
| D490,245 | S | | 5/2004 | Brouard |
| 6,915,902 | B2 | * | 7/2005 | Brouard ....................... 206/373 |
| 6,945,442 | B2 | * | 9/2005 | Godshaw et al. .............. 224/607 |
| 7,165,705 | B2 | * | 1/2007 | Haro .......................... 224/629 |
| 7,350,682 | B2 | * | 4/2008 | Meyer ......................... 224/628 |
| 7,673,777 | B2 | * | 3/2010 | Gleason, Jr. .................. 224/635 |
| D613,507 | S | * | 4/2010 | Brouard ....................... D3/315 |
| D614,404 | S | * | 4/2010 | Brunner ....................... D3/304 |
| 7,780,051 | B2 | * | 8/2010 | Godshaw et al. .............. 224/607 |
| 8,152,037 | B2 | | 4/2012 | Sabbag |
| 8,381,956 | B2 | * | 2/2013 | Gleason, Jr. .................. 224/645 |
| 8,403,141 | B2 | * | 3/2013 | Williams et al. .............. 206/372 |
| 8,651,273 | B2 | * | 2/2014 | Williams et al. .............. 206/372 |
| 8,708,206 | B2 | * | 4/2014 | Onessimo et al. ............. 224/576 |
| D714,059 | S | * | 9/2014 | Blackwell et al. ............. D3/304 |
| 8,833,557 | B1 | * | 9/2014 | Gwynn et al. ................. 206/373 |
| D725,910 | S | * | 4/2015 | Sampaio ....................... D3/315 |
| 2003/0075468 | A1 | * | 4/2003 | Story et al. ................... 206/373 |
| 2004/0065573 | A1 | * | 4/2004 | Brouard ....................... 206/373 |
| 2007/0056868 | A1 | * | 3/2007 | Godshaw et al. .............. 206/373 |
| 2008/0073361 | A1 | | 3/2008 | Brouard |
| 2008/0179370 | A1 | * | 7/2008 | Williams ...................... 224/682 |
| 2008/0202962 | A1 | * | 8/2008 | Brouard ....................... 206/373 |
| 2008/0230416 | A1 | * | 9/2008 | Brouard ....................... 206/372 |
| 2014/0239024 | A1 | * | 8/2014 | Brouard et al. ............... 224/259 |
| 2014/0262886 | A1 | * | 9/2014 | Kinskey et al. ............... 206/373 |

* cited by examiner



**Figure 1**



**Figure 2**



**Figure 3**



**Figure 4**



**Figure 5A**

**Figure 5B**



**Figure 5C**



**Figure 5D**



Figure 6



**Figure 7**



**Figure 8A**



**Figure 8B**



**Figure 9A**



**Figure 9B**



**Figure 10A**



**Figure 10B**



Figure 11



**Figure 12**



FIG. 13



*FIG. 14*

US 9,345,301 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

## SUPPORTED COMPOSITE TOOL PACK

### BACKGROUND

The present disclosure relates to devices for organizing and transporting tools and other work implements, more specifically to a tool carrying arrangement wearable on the back of a user.

Many boxes and bags have been used to organize and carry tools and other work implements. Rigid boxes for organizing and carrying tools are well-known. Buckets and soft bags are also commonly used for storing, transporting, and accessing tools and other work implements. When using traditional boxes, buckets and bags, it can be difficult to keep tools neatly arranged for quick access. Tools can be damaged by contact with each other during transport. Further, rigid buckets and tool boxes can be difficult to carry in locations requiring the use of hands to open doors, scale ladders, etc.

Modern infrastructure includes a huge number of widely dispersed sub-systems and components that must be installed, maintained or repaired by service personnel. Such systems and components are found in every possible environment, from communications equipment on rooftops and towers to energy infrastructure in below ground tunnels and chambers. Manufacturing, office and residential structures also include widely dispersed equipment. Installation and service personnel must bring tools, diagnostic equipment and parts to the equipment, wherever it is located. Often, such work areas are wet, dirty and have restricted access. Workers and their equipment must be able to safely access rooftops, tunnels and other locations where the worker must use both hands to gain access, so carrying bags or boxes by hand is not possible.

There is a need for tool storage and transport containers that protect tools, keep them organized, allow easy access to the tools and permit the user use of both hands while transporting the tools.

### SUMMARY

A supported composite tool pack according to aspects of the disclosure includes a concave plastic base coupled to a durable fabric body. A substantially rigid support panel divides the interior of the pack and supports the fabric body and contents of the pack with respect to the base. The pack includes a pair of backpack straps permitting the pack to be worn on the back of a user, while keeping both hands free for opening doors, hatches or scaling ladders. The fabric body defines a plurality of organizational structures inside the pack, including but not limited to closed and open pockets, rings and clips for the placement of tools, spare parts and other equipment. The base and support panel maintain the pack and its contents in an upright and accessible position when open or closed, giving the user a stable, protected work platform no matter the environment.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a front elevation view of a supported composite tool pack according to aspects of the present invention;

FIG. **2** is a rear elevation view of the supported composite tool pack of FIG. **1**;

FIG. **3** is a left side view of the supported composite tool pack of FIG. **1**;

FIG. **4** is a top view of the supported composite tool pack of FIG. **1**;

FIGS. **5A** through **5D** illustrate the internal structure and relationships among components of the supported composite tool pack according to aspects of the disclosure;

FIG. **6** is a left side view of the supported composite tool pack in an open configuration;

FIG. **7** is a rear view of the supported composite tool pack illustrating the strap support hasp disconnected from the hinged handle;

FIGS. **8A** and **8B** are perspective and sectional end views of the handle and hasp assembly with the hasp arranged for assembly to the hinge according to aspects of the disclosure;

FIGS. **9A** and **9B** are perspective and sectional end views of the handle and hasp assembly with the hasp assembled to the hinge pin;

FIGS. **10A** and **10B** are perspective and sectional end views of the handle and hasp assembly with the hasp latched to the hinge pin;

FIG. **11** is a partial rear elevation view of the supported composite tool pack showing a pack hanger extending from a pocket in the rear panel of the pack according to aspects of the disclosure;

FIG. **12** is a left side view of the supported composite tool pack with the front panel of the pack deployed to provide a support shelf according to aspects of the disclosure;

FIG. **13** is a rear view of the backpack strap assembly of the composite tool pack according to aspects of the disclosure; and

FIG. **14** is a partial, exploded view of the rear of the fabric body and back pad of the composite tool pack according to aspects of the disclosure.

### DETAILED DESCRIPTION OF THE DISCLOSED EMBODIMENTS

An embodiment of the disclosed supported composite tool pack (hereafter "the pack") will now be described with reference to FIGS. **1** through **14**. The pack, designated generally by reference numeral **10**, is configured in the form of a backpack. The major components of the pack **10** are a molded plastic base **12**, a central support member **14**, a handle assembly **16**, and a fabric body **18** including backpack straps **20** permitting the pack to be worn on the back of a user. As best shown in FIGS. **5A** through **5D**, the pack includes both hard and soft structural components. The base **12** of the pack **10** is a molded plastic tub configured to provide a stable support surface for the pack while protecting the contents of the pack from the environment. Although a molded plastic base **12** is disclosed, other manufacturing methods (such as thermoforming) and materials may be used to provide a base according to the disclosure. The fabric body **18** is constructed of heavy duty nylon and polypropylene materials to protect the pack contents and hold up in jobsite conditions. The base **12** includes internal flanges **22** that are secured to a central support panel **14** of corrugated ABS sheet, but other suitably rigid and durable materials may also be used to form the central support panel. The central support panel **14** is configured to extend the width and height of the pack **10** and is secured to the flanges **22** of the base **12** by rivets **24** or other suitable fastener. In the disclosed embodiment, the central support panel **14** is generally centrally located between the front and rear of the pack, but is not limited to this specific location. As best shown in FIGS. **5A** and **8-10**, a handle assembly **16** at the top of the pack includes a downwardly projecting flange **26** that is fastened to the central support panel **14** at the top of the pack **10** by rivets. Alternatively, the central support panel **14** may be trapped in place by other components, but not secured to the base **12** or handle assembly **16**. Thus, the central sup-

US 9,345,301 B2

3

port panel 14 forms a supportive spine of the pack 10 extending from the molded plastic base 12 to the handle assembly 16 at the top of the pack 10. The central support panel 14 divides the pack 10 into two primary compartments, a front compartment 28 and a rear compartment 30 as shown in FIGS. 5A and 5C.

As best shown in FIGS. 3 and 4, the disclosed pack 10 includes two primary zippers 32, 34 allowing access to the two primary compartments, 28, 30 of the pack. Each compartment 28, 30 includes at least one surface for the organization of tools, cables, parts and components and other work implements. In the disclosed embodiment, each compartment includes two surfaces upon which tools and work implements may be organized, numbered 1-4 in FIGS. 5C and 5D. As shown in FIG. 5A, two organizational panels 36, 38 are arranged back-to-back on either side of the central support panel 14, and together with the central support panel 14 form a support extending the length and width of the pack 10. Various zippered pockets and pouches are arranged on the fabric body 18 at the inside front and rear surfaces 40, 42 of the pack to provide additional protected storage. The exterior of the fabric body 18 includes a variety of fabric pockets, zipper pockets, D rings, and a large front pocket 44 secured with straps and quick release buckles 46. Bulky items that cannot be zipped inside the front pocket 44, may be secured using the straps and buckles 46.

The central support panel 14 is substantially, but not completely rigid. The central support panel 14 is stiff enough to support the bag body 18 and the contents of the pack in a vertical orientation when the bag is resting on the base 12, but will flex when exposed to compressive or twisting forces imposed upon the bag body 18 during use. Absolute rigidity of the central support panel is not required and a variety of materials or combinations of materials may be employed to provide the support functionality of the disclosed corrugated ABS sheet. The base 12 and central support panel 14, in combination with the bag body 18, result in an upright and stable configuration which protects the contents of the pack, while providing easy access to its contents. The upright nature of the pack 10 prevents all or parts of the bag body 18 from falling to the floor or ground where it can be soiled or damaged by the jobsite environment.

The organizational panels 36, 38 secured to the central support panel are constructed of durable nylon cordura fabric stitched to 1.5 mm polyethylene (PE) backing sheet. The PE sheet provides additional support at the center of the pack and protects the central support panel 14 from damage by sharp tools that may be stored in the pockets arranged on the panels 36, 38. As best seen in FIG. 5A tiered and nested pockets are arranged on each organizational panel 36, 38, with the largest pockets at the bottom of each organizational panel. The pockets are constructed to provide a range of sizes and orientations for the storage of various tools, parts and equipment and work implements. In the disclosed embodiment, the pockets are situated so that the heaviest and bulkiest items may be situated in the large pockets at the bottom of the pack but are easily accessible via the two main zipper openings 32, 34. Each organizational panel 36, 38 also may include flat pockets and zippered enclosures for the storage of flat and or less bulky items toward the top of the pack without obstructing the view of and access to the larger items at the bottom of the pack 10. The fabric of each organizational panel 36, 38 may extend past the bottom of the PE sheet to form a flap 48. As shown in FIG. 5A the flaps 48 are arranged against the bottom of the base 12 and secured to the base by rivets 50 or other suitable fastener. At the top of the pack 10, the organizational panels 36, 38 are secured to the top end of the central support panel

4

14 and the flange 26 extending downward from the handle assembly 16 by a plurality of rivets 50 or other suitable fastener. Together, the organizational panels 36, 38 and central support panel 14 connect the base 12 to the handle assembly 16 and provide a semi rigid supportive structure to the pack 10. The base 12 and central support 36, 38, 14 ensure that the pack remains upright even when the internal pockets are loaded with heavy tools and equipment and work implements.

The fabric pack body 18 extends from an upper lip 52 of the base 12 to the handle assembly 16 at the top of the pack 10. The pack body 18 is constructed of durable nylon and polypropylene fabric and webbing materials. These materials are preferred because of their abrasion resistance, strength, and resistance to rot and mildew as well as many common lubricants and solvents present at worksites. Other materials having similar properties may be employed. The fabric body 18 consists of fabric panels stitched together and secured to webbing support to surround and enclose the two primary compartments 28, 30 of the pack 10. As best seen in FIG. 1 the front of the fabric body includes one or more small zippered compartments 54 for quick access. A larger zippered compartment 44 on the front of the pack can accommodate larger items for quick access. This compartment 44 is also secured by straps and quick release buckles 46. It is possible to secure larger items, such as a coil of cable to the pack 10 using the straps and buckles 46. The front of the fabric body 18 is connected to a central portion 56 by front zipper 32.

As best seen in FIG. 14, the rear of the fabric body 18 includes a padded back panel 58 and backpack straps 20 with sternum strap 21. The fabric body 18 includes a pair of elongated pockets 60 for flat aluminum bars 62 which support and distribute the weight of the pack 10 during use. A thermoformed foam back cushion 58 improves the comfort of the pack during use and includes air channels to circulate air between the user and the pack 10. The rear portion of the fabric body including the backpack straps 20 is secured to the remainder of the fabric body by rear zipper 34. The backpack straps 20 are secured to the top and bottom of the rear of the fabric body 18 as shown in FIG. 3. A sternum strap 21 with quick release connector is arranged to extend between the backpack straps 20 across the chest of a user as additional support for the pack during use. The backpack straps 20 are constructed of heavy gauge durable fabric surrounding foam padding material.

With reference to FIGS. 2-4 and 13, a pair of load positioning straps 64 extend from an upper portion of the backpack straps 20 to a metal hasp 66 configured to latch with the pin 68 of the hinge assembly 16. The load positioning straps 64 serve two functions. First, the load positioning straps 64 cross the rear main zipper 34 and support the weight of the pack directly from the hinge pin 68 of the hinge assembly 16 via the hasp 66 as shown in FIGS. 3 and 4. This arrangement removes the weight of the pack 10 from bearing on the rear main zipper 34 and instead carries the weight via the hasp 66, load positioning straps 64 and backpack straps 20. Second, the load positioning straps 64 are adjustable in length, permitting the user to control the position of the pack 10 relative to the user's body. It will be noted by those familiar with the use of backpacks that it can be useful to allow a user to adjust the position of the backpack under different circumstances. For example, when walking on an inclined surface it may be useful to add length to the load positioning straps 64 and allow the weight of the pack to extend away from the user's body for balance. FIGS. 1-4 illustrate the hasp 66 engaged with the pin 68 of the handle assembly 16 at the top of the pack 10. FIG. 7 illustrates the hasp 66 disengaged from the handle assembly

US 9,345,301 B2

5

**16**. FIGS. **8**A-**10**B illustrate details of the hinge assembly **16** and the hasp **66** showing how the hasp is engaged to the hinge pin **68**. As shown in FIGS. **8**A and **8**B, the hasp includes a connecting member with slots **70** for receiving the load positioning straps **64**. The hasp **66** also includes a C shaped knuckle **72** configured to engage the hinge pin **68**. The hinge assembly **16** includes a molded plastic handle body **74** which supports four pivot points **76** for the hinge pins **68**. The handle body **74** supports each hinge pin **68** adjacent the pin's inner and outer ends. Between the pivot points **76**, the handle body includes a cradle **78** configured to support the hasp knuckles **72** when engaged with the hinge pins **68**. FIGS. **9**A and **9**B illustrate engagement of the hasp knuckles **72** with the hinge pins **68**. The open side of each knuckle **72** passes over the hinge pin **68** with the free end of each knuckle **72** passing between the hinge pin **68** and the cradle **78**. FIGS. **10**A and **10**B illustrate the hasp **66** fully engaged with the hinge pins **68** and in a position for use while the pack is worn by a user. The hasp **66** may only be engaged and disengaged from the hinge pins when the hasp is rotated into the position shown in FIGS. **8**A and **8**B. When the hasp is in the position shown in FIGS. **10**A and **10**B during use, the hasp **66** cannot be disengaged from the hinge pins **68**.

The molded plastic handle body **74** includes a peripheral flange **80** where the handle body **74** is secured to the fabric body **18** of the pack **10**. The handle body **74** also includes a downward extending flange **26** where the handle body **74** is connected to the central support panel **14** and organizational panels **36, 38** as discussed above. The peripheral flange **80** of the handle body **74** includes a groove **82** which facilitates stitching of the handle body **74** to the central arch of the fabric body **18** of the pack as best seen in FIGS. **3** and **4**. A molded plastic handle **84** includes four lobes **86** each defining an opening for the hinge pin **68**. The lobes **86** at each end of the handle **84** are spaced apart, exposing the hinge pins **68** and providing a space for the hasp knuckles **72** to engage the hinge pins **68**. The handle **84** includes a grip **88** of softer material molded around the central portion of the handle **84** to improve the ergonomics and grip of the handle **84**. In the disclosed embodiment, the hinge pin **68** is a 10 mm aluminum rod tapped at either end to receive a 6 mm screw **90**. The hinge pin **68** is inserted through the hinge supports **76** and handle lobes **86** and secured in place by screws **90**. The disclosed handle **84** folds flat at the top of the pack **10** when not in use as shown in FIGS. **8**A and **8**B.

FIG. **11** illustrates a hanger **92** that can be used to hang the pack **10** from any convenient support structure. The hanger **92** may be used to support the pack **10** off the ground when convenient or necessary to the user. The hanger **92** may also be employed to support the pack apart from the user while the user mounts or dismounts a ladder onto a roof or other structure. The hanger **92** includes a metal hook **94** constructed of material strong enough to support the weight of the pack **10** and its contents. The hook **94** is secured to the pack by an adjustable strap **96**. The hook **94** and strap **96** are stored in a small pocket at the top rear of the pack when not in use.

FIG. **12** illustrates the pack with the front zipper **32** open and the front panel of the pack separated from the central portion **56** of the pack and secured in an open position to form a shelf. A strap **98** extends from the upper inside of the pack to the upper inside of the front panel to support the front panel during use as a shelf. The shelf can provide a handy space for temporary storage of components or tools during use.

FIG. **6** illustrates the pack with the two main zippers **32, 34** open as well as the front auxiliary zipper open. Each of the main components of the fabric body is connected to the others by a gusset **100** at either side of the pack **10**. The gussets **100**

6

support the panels when open, preventing the fabric body **18** from collapsing to ground level which may be wet and/or dirty. The gussets **100** also prevent unnecessary stress on the main zippers **32, 34** which would result from allowing the front and rear panels of the pack **10** to open completely.

With reference to FIGS. **1**-**3** and FIG. **5**B, the molded plastic base **12** has a configuration specifically designed to improve the fit and function of the pack **10** when worn on the back of a user. The base **12** is higher at the front and tapers to a lower rear lip at the rear of the base. The rear side **102** of the base **12** is concave to conform to the back of the user. The lowered concave rear portion **102** of the base **12** improves the comfort of the pack during use. As best seen in FIG. **5**B, the base **12** includes an upstanding lip **52** above a circumferential ridge **104**. As shown in FIGS. **1** and **3**, the bottom end of the fabric body **18** is surrounded by a folded web **106**, which is stitched to the fabric body. Rivets **50** extend through the folded web to secure the fabric body to the base.

The fabric body **18** includes an arch shaped central portion **56** extending between the front and rear panels of the fabric body **18**. The central portion **56** of the fabric body is connected to the front and rear panels by the front and rear main zippers **32, 34**, respectively. The arch shaped central portion **56** includes a reinforcing web material extending from one side of the base to the other over the top of the pack **10**. The sides of the central portion **56** may be provided with various hooks, pockets and attachment points as shown in FIGS. **1**-**4**. The central portion **56** of the fabric body **18** may also include PE sheet sewn between layers provide additional structural support to the fabric body **18**. The reinforced central portion **56** of the fabric body **18** provides another load path for weight within the pack extending from the molded base **12** to the handle assembly **16**. This load path is in addition to the connection between the handle assembly **16** and base **12** provided by the central support panel **14** and organizational panels **32, 34** as shown in FIG. **5**A.

With reference to FIGS. **6** and **12**, it will be observed that the central portion **56** of the fabric body **18** is asymmetrical, resulting in a pack shape conducive to use as a backpack. The asymmetrical central portion **56** shifts the rear panel of the pack **10** to a more upright position with respect to the base **12**. The rear main zipper **34** meets the lip **52** of the base **12** at an angle A closer to 90° than the front main zipper **32**, which meets the lip **52** at angle B as shown in FIG. **12**.

Many advantages of the disclosed pack will now be apparent to those skilled in the art. Many choices of materials, components, attachment means and fasteners may be made without departing from the scope of the disclosure. Accordingly the disclosed embodiment is to be construed as illustrative only and not limiting.

What is claimed:

1. A tool pack comprising:

a base defining a rigid support surface and including a peripheral lip;

a support panel substantially perpendicular to said base;

a bag body extending from said peripheral lip to define an interior space surrounding said support panel, said bag body including at least one interior surface having a plurality of pockets, a back panel, and a pair of backpack straps each having an upper portion secured to said back panel adjacent an upper edge thereof and a lower portion secured to said back panel adjacent said peripheral lip permitting the pack to be carried on the back of a user;

a handle assembly coupled to an upper end of said bag body opposite said base, said handle assembly including a handle base coupled to said bag body and a handle pivotably coupled to said handle base;

US 9,345,301 B2

7

8

a pair of adjustable length load positioning straps, each of said load positioning straps extending from one of said backpack straps to said handle base,

wherein said support panel divides said interior space into two compartments and said bag body includes a reversible closure mechanism arranged on opposite sides of said handle assembly, with one said closure mechanism intermediate said pair of backpack straps and said handle mechanism, each reversible closure mechanism permitting access to one of said compartments and said load positioning straps spanning the closure mechanism intermediate said pair of backpack straps and said handle mechanism.

**2**. The tool pack of claim **1**, comprising a central portion of said bag body extending between said closure mechanisms, said central portion surrounding said support panel and connecting said base to said handle assembly.

**3**. The tool pack of claim **1**, wherein said support panel has a width and height substantially equal to a width and height of said interior space.

**4**. The tool pack of claim **1**, comprising a plurality of pockets coupled to at least one surface of said support panel.

**5**. The tool pack of claim **1**, wherein said support panel is permanently coupled to both said base and said handle base.

**6**. The tool pack of claim **1**, wherein said base is a substantially rigid concave tub, said peripheral lip extending above said support surface.

**7**. The tool pack of claim **1**, wherein said base includes a bottom defining said support surface, and a side wall extending from said bottom to said peripheral lip.

**8**. The tool pack of claim **7**, wherein said side wall has a height that varies with respect to said support surface.

**9**. The tool pack of claim **1**, wherein said bag body exterior surface including said backpack straps is coupled to said peripheral lip along one side of said base, said peripheral lip and said base having a concave configuration when viewed from outside said interior space.

**10**. The tool pack of claim **1**, wherein said pair of load positioning straps include a coupling for reversibly connecting said backpack straps to said handle base.

**11**. The tool pack of claim **1**, comprising a hasp connected to said pair of load positioning straps, said hasp including a coupling for reversibly connecting said pair of load positioning straps to said handle assembly.

**12**. A tool pack comprising:

a substantially rigid concave base defining a support surface and including a peripheral wall projecting from said support surface to an upstanding peripheral lip;

a fabric bag body permanently coupled to said peripheral lip to define an interior space, said bag body including a back panel, a pair of backpack straps each having an upper portion secured so said back panel adjacent an upper edge thereof and a lower portion secured to said back panel adjacent said peripheral lip and a plurality of pockets on at least one inside surface;

a generally rigid support panel dividing said interior space into two compartments, said support panel bearing on said base to support said fabric bag body with respect to said base;

a plurality of organizational structures arranged on at least one side of said support panel;

two reversible closure mechanisms in said bag body, each closure mechanism permitting access to one of said compartments;

a central portion of said bag body extending between said closure mechanisms and surrounding a top and sides of said support panel; and

a pair of load positioning straps, each of said load positioning straps extending from one of said backpack straps to said central portion of said bag body adjacent the top of said support panel and spanning one of said reversible closure mechanisms.

**13**. The tool pack of claim **12**, comprising a handle mechanism secured to said central portion of said bag body adjacent the top of said support panel, said handle mechanism between said closure mechanisms and generally aligned with said support panel.

**14**. The tool pack of claim **13**, wherein said support panel is coupled to both said base and said handle assembly.

**15**. The tool pack of claim **12**, wherein said load positioning straps are reversibly coupled to said central portion of said bag body and when coupled to said bag body central portion, said load positioning straps connect said backpack straps to said bag body, thereby removing stress from said one of said reversible closure mechanisms.

**16**. The tool pack of claim **13**, comprising a coupling on each load positioning strap permitting the load positioning strap to be reversibly coupled to a base of said handle mechanism.

\* \* \* \* \*

Exhibit B

US006915902B2

(12) **United States Patent**                    (10) **Patent No.:**      **US 6,915,902 B2**

Brouard                                          (45) **Date of Patent:**         **Jul. 12, 2005**

(54) **TOOL BAG**

(75) Inventor: **Roger H. Brouard**, Norwalk, CT (US)

(73) Assignee: **Veto Pro Pac, LLC**, Norwalk, CT (US)

( * ) Notice:      Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 33 days.

(21) Appl. No.: **10/263,277**

(22) Filed:      **Oct. 2, 2002**

(65)            **Prior Publication Data**

        US 2004/0065573 A1 Apr. 8, 2004

(51) **Int. Cl.**$^7$ ............................................... **B65D 85/28**
(52) **U.S. Cl.** ...................................................... **206/373**
(58) **Field of Search** ................................. 206/349, 372, 206/373, 375, 376, 379; 150/106, 107, 109, 110, 116; 190/102

(56)            **References Cited**

            U.S. PATENT DOCUMENTS

    5,174,447  A  * 12/1992  Fleming ..................... 206/373

| 5,423,404 | A | * | 6/1995 | Shaw | 206/372 |
| 5,848,744 | A | * | 12/1998 | Dischner et al. | 206/349 |
| 5,947,286 | A | * | 9/1999 | Chau | 206/372 |
| 6,126,003 | A | * | 10/2000 | Brouard | 206/372 |
| 6,138,827 | A | * | 10/2000 | Marshall | 206/373 |
| 6,478,463 | B2 | * | 11/2002 | Snider | 206/373 |

* cited by examiner

*Primary Examiner*—Luan K. Bui
(74) *Attorney, Agent, or Firm*—Michaud-Duffy Group LLP

(57)            **ABSTRACT**

A tool bag having a bag body defining an interior area and a central panel coupled to the bag body bifurcating the interior area. Openings in the bag body provide access to the interior area. A tool deflector is coupled to the central panel. At least one tool pocket is coupled to and defined in part by the tool deflector. The tool deflector is made from a suitable material such as plastic to provide a hard surface to prevent the edges of tools from damaging the central panel when placed in or removed from the tool pockets. A handle is attached to the bag body for carrying the tool bag. The tool bag provides for safe, orderly and convenient storage and transport of tools.

7 Claims, 11 Drawing Sheets





FIG. 1

Case 3:23-cv-01349-OAW   Document 46-2   Filed 02/07/24   Page 50 of 71



*FIG. 2*



FIG. 3A



FIG. 3B



*FIG. 4*



FIG. 5



FIG. 6

Case 3:23-cv-01349-OAW   Document 46-2   Filed 02/07/24   Page 56 of 71



FIG. 7

Case 3:23-cv-01349-OAW   Document 46-2   Filed 02/07/24   Page 57 of 71



FIG. 8

FIG. 9





FIG. 10

US 6,915,902 B2

1

# TOOL BAG

## FIELD OF THE INVENTION

The present invention relates generally to tool storage devices, and in particular, to tool bags for organizing, transporting and accessing tools.

## BACKGROUND OF THE INVENTION

There are presently a variety of carrying devices on the market designed to store and transport tools. For example, many companies sell rigid tool boxes that have a hinged top and a removable tray that lifts out for accessing a lower interior area designed for bulk tool storage. Other, similar tool boxes may include small drawers for storing smaller tools or parts. However, these types of tool boxes are usually designed to store tools horizontally, often resulting in a disorganized mass of tools in a single storage area in the bottom of the tool box. This arrangement can make selection and accessing of the stored tools somewhat difficult and potentially dangerous.

Another disadvantage of rigid tool boxes such as those described above is that, often, they do not conform to storage areas provided in vehicles. Usually tradesmen transport or store tool boxes in their vehicles, however, enough space for a rectangular hard tool box is often not available.

Other tool storage products available are fabric bags similar to doctor's bags having a zippered opening providing access to an inside cavity for storing tools. However, tools stored in this type of bag are also generally stored together, horizontally, in a single storage area. Inner pockets may be provided, although access to the inner pockets can be substantially restricted when the bag is full or partially full of tools.

Most fabric tool bags available offer an alternative to the rigid tool boxes described above, but do not overcome the problems associated with bulk tool storage. Also, when storing or transporting sharp tools horizontally or in pockets, in a purely fabric bag, the bag can easily be damaged by the tools.

Another tool storage system available is a bag designed to fit over an empty 5-gallon plastic bucket. This type of bag often has a variety of tool pockets designed to fit both on the inside and outside of the bucket. The bucket provides a frame and supports the tool bag. One disadvantage of this type of tool bag is that convenient storage space for a 5-gallon bucket is often quite limited in vehicles, making it difficult to transport the stored tools.

Based on the foregoing, it is the general object of the present invention to provide a tool bag that improves over, or overcomes the problems and drawbacks of the prior art.

## SUMMARY OF THE INVENTION

The present invention provides a tool bag having a bag body defining an interior area and a central panel coupled to the bag body that bifurcates the interior area. Openings in the bag body provide access to the interior area of the tool bag. A tool deflector is coupled to the central panel and is made from a suitable material such as plastic for providing a hard surface. At least one tool pocket is coupled to and

2

defined in part by the tool deflector. The tool deflector is positioned to prevent the edges of tools from damaging the bag body when placed in or removed from the tool pockets. A handle is attached to the bag body for carrying the tool bag. In the preferred embodiment, the handle is pivotally coupled to the bag body such that, the handle is movable between an upstanding position when it is gripped by a user, and a normal position wherein the handle overlies the tool bag when it is not gripped by a user. Thus, the tool bag of the present invention provides for safe, orderly and convenient storage and transport of tools.

One advantage of the present invention is that the tool pockets provide for vertical storage and easy accessibility for a large number of tools of various sizes and shapes. Additionally, the tool deflector provides a hard surface that unlike purely fabric bags will not be substantially damaged by the sharpened edges of some tools. In addition, the central panel includes a substantially rigid support member coupled thereto for providing vertical support for the bag body.

Another advantage of the present invention is that the tool pockets provide separate and individual storage areas for tools wherein the stored tools are less likely to be damaged by contact with other tools during storage or transport.

Still another advantage of the tool bag of the present invention is that the organization capability provided by the tool pockets allows one to quickly and easily, inventory and access a large quantity of tools by visually scanning the interior area of the tool bag. This also helps to prevent tools from being lost or left at a job site.

The tool pockets can be designed having specific sizes and shapes to accommodate various tools so that the appropriate tools fit snugly therein. Desirably, the tool bag has tool pockets formed in rows adjacent to and supported by the central panel wherein a first row of pockets has the tool deflector forming a rear panel thereof and a front panel which also serves as a rear panel for a next successive row of tool pockets. The rows of tool pockets can be tiered providing tool pockets for longer tools to be stored in deep pockets such as the first row of tool pockets and smaller tools to be stored in successive rows of tool pockets. The bag body can also include additional tool pockets formed on end panels interior the bag body or on exterior panels thereof.

Preferably, the bag body is manufactured from a flexible material such as nylon attached to a flat bottom member formed from a hard plastic or other substantially rigid material. The central panel can be attached approximately perpendicularly to the bottom member and include a substantially rigid support member coupled thereto so that the tool bag is supported in an upstanding position. In the preferred embodiment, the central panel is formed of two fabric panels having the substantially rigid support member retained therebetween via stitches that attach the two fabric panels together surrounding the support member.

The openings in the bag body are arranged at the periphery thereof, so that in an open position, a flap of body material is attached only on one side of the opening providing access to the entire interior area of the tool bag. The flap includes pairs of cooperating fasteners attached thereto so that the flap can fold on itself and be secured in one or more positions when the tool bag is open. At least one

US 6,915,902 B2

3

opening is provided to access each of the bifurcated interior areas. Zippers are provided as closures for the openings. In this arrangement, stored tools are presented in an organized manner for convenient access by a user. Also, the tools are maintained in better condition when compared to tools stored in bulk storage tool boxes.

An ergonomically designed handle is attached to the bag body and includes a soft grip to provide comfort to the user when carrying the tool bag.

These and other features, aspects, and advantages of the present invention will become better understood with reference to the following description, drawings and appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a perspective view of a tool bag according to the present invention;

FIG. **2** is a side view of the tool bag of FIG. **1**;

FIG. **3A** is a perspective view of the bottom member of the tool bag of FIG. **1**;

FIG. **3B** is a partial cross-sectional end view of the tool bag of FIG. **1**;

FIG. **4** is a perspective view of the handle of the tool bag of FIG. **1**;

FIG. **5** is a perspective view of the tool bag of FIG. **1** in an open position;

FIG. **6** is an illustration showing the size of a first row of tool pockets in a preferred embodiment of the present invention;

FIG. **7** is an illustration showing the size of a second row of tool pockets in a preferred embodiment of the present invention;

FIG. **8** is an illustration showing the size of a third row of tool pockets in a preferred embodiment of the present invention;

FIG. **9** is an illustration showing the depth of the rows of tool pockets in a preferred embodiment of the present invention; and

FIG. **10** is a bottom side view of a bottom member of the present invention.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENT

As shown in FIGS. **1**–**5** a tool bag generally designated by the reference numeral **10** comprises a bottom member generally, **12** and a bag body generally designated by the reference numeral **14**. FIG. **2** shows the bag body **14** attached to the bottom member **12** via fasteners **13**.

Referring to FIG. **3A**, the bottom member **12** is formed in the shape of a tray having a substantially flat bottom portion **17** and upstanding walls **18**. FIG. **3B** shows the bag body **14** having a central panel **15** attached to the bottom member **12** such that the central panel is secured substantially perpendicular to the bottom member **12**. A plurality of rivets **19** attach the central panel **15** to the bottom member **12**. The central panel **15** includes two fabric panels **21** having a substantially rigid support member **23** retained therebetween via stitches **25**. A tool deflector **16** is secured to the central panel **15** on either side thereof adjacent a first row of tool

4

pockets **30** shown in FIG. **5**. (FIG. **3B** does not include the tool pockets.) The tool deflector **16** is constructed of an impact resistant plastic material. Alternatively, the bottom member **12** and support member **23** could be formed in one piece.

Still referring to FIGS. **1**–**5**, the central panel **15** bifurcates the interior area **26** formed by the bag body **14** and the design and construction of the tool bag **10** on each side of the central panel is approximately identical. However, the present invention is not limited in this regard as each side of the bifurcated interior area **26** could have features different from the other side. For example, in another embodiment of the tool bag **10**, the area on one side of the central panel **15** defines a single storage area while the other side has a plurality of tool pockets. The description provided herein describes the preferred embodiment of the tool bag **10** wherein the interior area **26** is approximately identical on either side of the central panel **15**, thus, the interior area will be explained with reference to only one side thereof.

The bag body **14** is preferably manufactured from a ballistic nylon material for strength and durability, however any flexible material such as leather or fabric could be utilized.

First, second and third rows of tool pockets, **30**, **32** and **34** are coupled to the central panel **15** and tool deflector **16**. The first row **30** is defined in part by the tool deflector **16** wherein the tool deflector forms a rear wall of the first row of tool pockets **30**. The tool deflector **16** provides a hard surface to prevent damage to the central panel **15** of the bag body **14** when tools are inserted or removed from the first row of tool pockets **30**. As such, the tool deflector **16** is preferably manufactured from an impact resistant material such as plastic. Each successive row **32** and **34** of tool pockets is defined in part by a front panel of the preceding row as shown in FIG. **5**. The rows of tool pockets **30**, **32** and **34** are each constructed by stitching a panel of material to the central panel **15** in an undulating fashion so as to create each of the rows of tool pockets. In the preferred embodiment the rows of tool pockets **30**, **32** and **34** are tiered wherein the first row of tool pockets **30** has an overall height greater than the overall height of the second row of tool pockets **32**. Accordingly, the third row of tool pockets **34** has an overall height less than the overall height of the second row **32**. A fourth row of tool pockets **38** is attached to and defined in part by the front panel of the tool pockets in row **34**.

Referring again to FIGS. **1**–**5**, a handle **40** is attached to a top surface **42** of the bag body **14**. The handle **40** has a lower portion **44** disposed in a pocket **46** attached to the central panel **15** and top surface **42** of the bag body **14**. Fasteners **48** are secured through the apertures **50** defined by the lower portion **44** of the handle **40** and attach the handle to the tool bag **10**. The handle **40** defines an opening **52** through which a hand of the user can be inserted in to carry the tool bag **10**. The opening **52** has an enlarged rib **54** for providing structural support thereto. A strap **56** extends through the opening **52** and is attached to each side of the pocket **46** to further attach the handle **40** to the bag body **14**. The pocket **46** could consist of only two flaps of body material attached to the handle **40**. An ergonomically styled, molded grip **58** is formed through and adjacent the opening **52** to provide comfort to the user when carrying the tool bag **10**.

US 6,915,902 B2

5

Depending on a particular trade or the types of tools the tool bag is designed to accommodate, each of the rows of tool pockets, **30**, **32**, **34** and **38** can be arranged accordingly. In FIGS. **6–9**, a first row of tool pockets, **30** has an overall height of approximately 9 inches and a width defined by the distance between the stitch lines attaching the tool pockets to the central panel **15**, of approximately 2, 2.5 or 3.5 inches. The depth of the tool pockets in row **30** is approximately 1 inch measured outwardly from the central panel **15**. The following references to the height, width and depth of the tool pockets are all measured in the same manner as discussed above with reference to the first row of tool pockets **30**.

In other embodiments of the invention, the first row of tool pockets **30**, ranges in height between approximately 8 inches to about 10 inches, in width, between approximately 1 inch to about 4 inches and the depth of the pockets ranges between approximately 0.75 inches to about 2 inches.

Referring to FIGS. **7** and **9**, the preferred embodiment has a second row of tool pockets **32** having an overall height of approximately 7 inches and a width of approximately 3.5, 4 or 4.5 inches. As shown in FIG. **9**, the depth of the tool pockets in row **32** is approximately 2 inches as measured outwardly from the central panel **15**. In other embodiments the second row of tool pockets, **32** ranges in height between approximately 6 inches to about 8 inches, in width between approximately 3 inches to about 6 inches and the depth of the pockets ranges between approximately 1.5 inches to about 3 inches.

Referring to FIGS. **8** and **9**, in the preferred embodiment, a third row of tool pockets **34** has an overall height of approximately 5 inches and a width of approximately 3.5, 4 or 4.5 inches. As shown in FIG. **9**, the depth of the tool pockets in row **34** is approximately 4.375 inches. In other embodiments of the invention, a third row of tool pockets, **34** ranges in height between approximately 4 inches to about 6 inches, the width of the tool pockets is approximately 3 inches to about 6 inches and the depth of the pockets ranges between approximately 3 inches to about 6 inches.

As discussed hereinabove, in the preferred embodiment of the invention, the first, second and third rows of tool pockets **30**, **32** and **34** are tiered allowing for longer tools (e.g. chisels, screwdrivers) to be stored in the taller pockets in the first row of tool pockets **30**, and smaller or shorter tools to be stored in the second and third rows of tool pockets, **32** and **34**. The tiered configuration of the tool pockets allows most tools to be stored vertically for easy accessibility. Each of the rows of tool pockets **30**, **32** and **34** has a finishing strip **60** along the top edge thereof.

Referring to FIG. **5**, a row of pockets **38** is attached to and defined in part by the preceding row of tool pockets **34**. Tool pockets **62** are attached to and defined in part by the end panel **64**. A tool pocket **66** having a zipper closure **68** is attached to and defined in part by the central panel **15** of the bag body **14**.

As shown in FIG. **1**, the bag body **14** has reinforcement straps **70** sewn on all sides thereof providing additional support and durability to the bag body. A trim strip **72** is stitched to the central panel **15** and an upper edge of the tool deflector **16** providing additional support as well as a

6

decorative trim thereto. Zipper closures **74** are disposed at the openings of each of the bifurcated areas of the bag body **14**. In the FIG. **1** embodiment, the openings in the bag body **14** for accessing the interior area **26** are dispsosed at a periphery of the bag body **14**.

Referring again to FIG. **1**, a tool pocket **76** is attached to and defined in part by an outer surface of the bag body **14**. The tool pocket **76** has a zipper **78** providing a closure mechanism at the opening thereof. Attached to the end panels **64** of the bag body **14** are rings **80** for securing a detachable carrying strap **82** to the tool bag **10**. Referring to FIGS. **1** and **5**, rings **84** and **86** are attached to the cover panel **88** and the central panel **15** respectively, for securing articles to the both the exterior and interior of the tool bag **10**. In other embodiments of the invention, other types of couplers could be utilized in place of the rings **84** and **86** for attaching articles to the tool bag **10**.

Referring to FIG. **10**, the bottom member **12** defines frangible areas **94** forming optional drains for the interior area **26**. These frangible areas **94** could be broken away by a user should drainage of the interior be desired. Alternatively, drain openings could be provided in the bottom member **12** of the tool bag **10**.

A user of the tool bag **10** of the present invention can open one or both of the cover panels **88** of the bag body **14** by unzipping the zippers **74** thereby providing access to each of the bifurcated interior areas of the tool bag. (FIG. **5** shows the tool bag **10** having one of the cover panels **88** in an open position). Each cover panel **88**, when in an open position, can be folded on itself and secured adjacent the lower portion of the bag body using one or both pairs of snap fasteners **90** and **92**. This retains the cover panel **88** in a secured position while the tool bag **10** is in an open position and prevents damage to the cover panel and the zipper **74**.

Once opened, the various pockets formed by the first, second, third and fourth rows of tool pockets **30**, **32**, **34** and **38** as well as the tool pockets **62** and **66** can be loaded with tools. The tiered configuration of the tool pockets allows the tools to be stored vertically for easy accessibility and inventory. Tools and other items can be also stored in the tool pockets **76** located on the cover panels **88**. Once the tool bag **10** is loaded, the cover panels **88** can be returned to their closed position using the zipper closure members **74** (see FIG. **1**). In the closed position, the tools are retained in the tool pockets interior the tool bag **10** in such a way that the tools will not come out of the tool pockets during carrying and transport of the tool bag even in the event the tool bag is accidentally knocked over onto a side thereof. The central panel **15** and support member **23** also help balance the load of tools so that the tool bag **10** can be easily carried by the user.

Thus, it can be seen from the foregoing specification and attached drawings that the tool bag of the present invention provides an effective means for carrying and accessing tools stored therein. It is believed that the many advantages of this invention will now be apparent to those skilled in the art. It will also be apparent that a number of variations and modifications may be made to the tool bag without departing from the spirit and scope of the invention. Accordingly, the foregoing description is to be construed as illustrative only, rather than limiting.

US 6,915,902 B2

7

8

What is claimed is:

1. A tool bag comprising:

a bag bottom having a flat surface;

a bag body extending from a periphery of the bag bottom, the bag body coupled to the bag bottom and including at least one fabric body portion positioned substantially centrally of and extending from said bag bottom, said at least one fabric body portion being non-removably coupled to said bag bottom;

said fabric body portion forming in-part at least one interior area, and having a plurality of pockets, at least one of said pockets being positioned within another of said pockets such that an outer surface of said at least one of said pockets forms an inner surface of said another of said pockets, each of said pockets being at least partially coupled to said fabric body portion;

said bag body further including a central, generally rigid panel-like member positioned adjacent to said at least one fabric body portion and extending substantially normal to said bag bottom, said rigid panel-like member being cooperative with said fabric body portion to bifurcate an interior area defined by said fabric body portion into only two interior compartments; and

a single handle hingedly attached to said fabric body portion of said bag body and positioned centrally of, longitudinally along, and extending outwardly from a top outermost surface defined by said bag body, said handle being movable relative to said top outermost surface and movable relative to said central panel.

2. A tool bag as defined by claim 1 wherein said bag body is coupled to said bag bottom.

3. A tool bag as defined by claim 1 wherein at least a portion of said bag bottom is substantially rigid.

4. A tool bag as defined by claim 1 wherein said bag body defines at least two zippers each for at least partially closing said bag body.

5. A tool bag as defined by claim 1 wherein said pockets of said plurality of pockets are arranged in rows.

6. A tool bag as defined by claim 1, wherein said bag body is operably openable so that at least one of said interior areas is exposed, and wherein said bag body defines at least one flap when in an open position.

7. A tool bag as defined by claim 1, wherein a grip is formed through and adjacent an opening of said single handle.

*   *   *   *   *

Exhibit C

US00D613507S

(12) **United States Design Patent**
Brouard

(10) Patent No.: **US D613,507 S**
(45) Date of Patent: ** **Apr. 13, 2010**

(54) **OPEN TOP CARRIER**

(75) Inventor: **Roger Brouard**, Norwalk, CT (US)

(73) Assignee: **Veto Pro Pac, LLC**, Norwalk, CT (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/288,126**

(22) Filed: **May 30, 2007**

(51) **LOC (9) Cl.** ................................................. **03-01**
(52) **U.S. Cl.** ....................................... **D3/315**; D3/905
(58) **Field of Classification Search** .................. D3/20,
D3/26, 201, 304, 307–311, 315, 318–319,
D3/321–322, 905, 292; 206/1.7–1.9, 372–373
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D176,844 | S | * | 2/1956 | Evans ............................ D3/309 |
| 2,740,517 | A | * | 4/1956 | Evans ............................ 206/373 |
| D273,207 | S | * | 3/1984 | Clanton ........................ D3/309 |
| D325,280 | S | * | 4/1992 | Nelson ......................... D3/309 |
| D327,562 | S | * | 6/1992 | Brightbill ..................... D3/308 |
| D346,682 | S | * | 5/1994 | Trovato ........................ D3/308 |
| D376,454 | S | * | 12/1996 | Fierek et al. ................. D32/54 |
| D376,477 | S | * | 12/1996 | Patterson, Jr. ............... D3/304 |
| D414,337 | S | * | 9/1999 | Hubert ......................... D3/315 |
| D420,221 | S | * | 2/2000 | Williams et al. ............. D3/315 |
| D426,384 | S | * | 6/2000 | Brouard ....................... D3/276 |
| 6,085,902 | A | * | 7/2000 | Fang ............................. 206/373 |
| 6,126,003 | A | * | 10/2000 | Brouard ....................... 206/372 |
| D474,891 | S | * | 5/2003 | Huang .......................... D3/309 |
| 6,571,998 | B2 | * | 6/2003 | Godshaw et al. ............ 224/607 |
| D490,245 | S | * | 5/2004 | Brouard ....................... D3/318 |
| 6,810,933 | B2 | * | 11/2004 | Gordon et al. .............. 150/112 |
| D502,599 | S | * | 3/2005 | Cabana et al. ............... D3/292 |
| D524,544 | S | * | 7/2006 | Crook .......................... D3/319 |
| D553,362 | S | * | 10/2007 | Godshaw et al. ............ D3/310 |
| 7,314,126 | B2 | * | 1/2008 | Godshaw et al. .......... 190/18 A |
| 7,314,133 | B2 | * | 1/2008 | Redzisz ....................... 206/373 |
| 2008/0179370 | A1 | * | 7/2008 | Williams ..................... 224/682 |

| | | | | |
|---|---|---|---|---|
| 2008/0202962 | A1 | * | 8/2008 | Brouard ....................... 206/373 |
| 2008/0230416 | A1 | * | 9/2008 | Brouard ....................... 206/372 |

OTHER PUBLICATIONS

Bucket Boss Brand 06004 GateMouth Tool Bag. Downloaded Sep. 30, 2008 at http://www.amazon.com/dp/ B00002243C?smid=A31AW2OZADFE8G&tag=nextag-tools-tier4-20&linkCode=asn.*
Open Top Tool Bags. Downloaded Sep. 28, 2008 at http://www. vetopropac.com/products/default.asp?id=267.*

* cited by examiner

*Primary Examiner*—Adir Aronovich
*Assistant Examiner*—Roselynne Cody
(74) *Attorney, Agent, or Firm*—Michaud-Kinney Group LLP

(57) **CLAIM**

The ornamental design for an open top carrier, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a open top carrier showing the design of the present invention;

FIG. **2** is a plan view thereof;

FIG. **3** is a front elevation view thereof;

FIG. **4** is a right elevation view thereof;

FIG. **5** is a left elevation view thereof; and,

FIG. **6** is a rear elevation view thereof.

In the figures four types of broken lines are used. Single lines of long dashes are meant to enclose unclaimed areas. Two closely spaced lines of long dashes delineate fabric of substantial thickness overlaid on an underlying substrate of material all of which is also unclaimed. Lines composed of short dashes are lines of stitching lying within the claimed subject matter. Lines of evenly spaced dots are meant to connote lines of stitching which are in unclaimed areas of the present invention.

**1 Claim, 6 Drawing Sheets**





FIG.1



FIG.2



FIG.3



FIG.4



FIG.5

Case 3:23-cv-01349-OAW   Document 46-2   Filed 02/07/24   Page 71 of 71



FIG.6